# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § § | **CHAPTER 11 CASE** |
| **CLEARWATER TRANSPORTATION, LTD.,** | § § § | **CASE NO. 19-50292-cag** |
| **Debtor.**[1] | § | |

## EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

Clearwater Transportation, Ltd. (the "Debtor"), as debtor and debtor-in-possession, files

this *Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to Use Cash*

*Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and*

*(IV) Granting Related Relief* (the "Motion") requesting that the Court enter an interim order and

a final order pursuant to §§ 105, 361, and 363 of chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing the Debtor's use of cash collateral, as that term

is defined in § 363(a) of the Bankruptcy Code (the "Cash Collateral"), and granting related relief.

Contemporaneously with the filing of this Motion, the Debtor has filed the *First Day*

*Declaration of Monty Merrill in Support of First Day Motions* (the "Merrill Declaration"), which

contains additional background information on the Debtor and its operations and is incorporated

herein by reference.

---

[1] The Debtor's address is 6013 Fountainwood, San Antonio, Texas 78233 and the last four digits of its Federal Tax Identification number are 2020.

4834-2093-8887.1
117928\000001

## I. JURISDICTION, VENUE, CORE STATUS AND BASES FOR RELIEF

1.     The Court has jurisdiction over this chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     This is a core proceeding under 28 U.S.C §§157(b)(2)(M) and the Court has the constitutional authority to enter an interim and final order on this Motion under *Stern v. Marshall*, 564 U.S. 462 (2011) and its progeny.

3.     The bases for the relief requested herein are §§ 105(a), 361, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, L. Rules 4001 and 9013 of the Bankruptcy Local Rules for the Western District of Texas (the "Bankruptcy Local Rules").

4.     Attached as Exhibit "A" to this Motion is the proposed Interim Order (I) Authorizing Debtor To Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief (the "Interim Cash Collateral Order") which Debtor seeks to have the Court enter on this Motion.

## II. BACKGROUND

### A.     Description of the Debtor

5.     On February 7, 2019 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as debtor and debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  No trustee or examiner has yet been appointed in this chapter 11 case (the "Case"), and no committees have been appointed or designated by the United States Trustee.

6.     The Debtor is a rental car company franchisee operating under the Dollar Rent A Car, Thrifty Rent A Car and Hertz Rent A Car brands.  Debtor's corporate headquarters is

located in San Antonio, Texas. Debtor operates as Dollar Rent A Car and Thrifty Rent A Car at the Austin-Bergstrom International Airport in Austin, Texas. Debtor operates as Dollar Rent A Car, Thrifty Rent A Car and Hertz Rent A Car at the San Angelo Regional Airport- Mathis Field and operates as Dollar Rent A Car and Thrifty Rent A Car at the Killeen - Fort Hood GRK Regional Airport.

**B.      Potential Pre-Petition Secured Claims**

7.      Debtor has financed its operations through various loan and factoring arrangements. Those loans and purported factoring transactions are as follows:

a.  FC Marketplace/Pioneer Park Loan:

Debtor executed a *Business Loan and Security Agreement and Commercial Promissory Note* in favor of FC Marketplace, LLC ("FC Marketplace") on October 28, 2015 for a loan in the amount of $500,000. Monty Merrill ("Mr. Merrill") executed a *Continuing Guaranty* for this debt. This loan is a five (5) year loan, maturing October 28, 2020, and provides for monthly payments in the amount of $11,914.60. In connection with the FC Marketplace loan, Debtor granted FC Marketplace a security interest in essentially all assets of the Debtor, specifically including all accounts, all equipment, goods, inventory and fixtures, and all proceeds thereof. This loan is now being administered by Pioneer Park LLC ("Pioneer Park") and it appears that the loan has been assigned to Pioneer Park. FC Marketplace filed a UCC-1 financing statement on October 28, 2015 as the secured party, and thereafter, a UCC financing statement amendment was filed by Pioneer Park on November 30, 2015, reflecting assignment of the FC Marketplace financing statement

and listing Pioneer Park as the secured party. Debtor is current on this loan and the current balance is approximately $236,700.

b. Newtek Small Business Finance Loan:

Debtor has an SBA Guaranteed Loan with Newtek Small Business Finance, LLC ("Newtek"). The loan is in the amount of $690,000. Debtor executed a *Loan Agreement* and *U.S. Small Business Administration Note* in favor of Newtek, dated November 29, 2017. Debtor also executed a *Security Agreement* in favor of Newtek which essentially covered all assets of Debtor, including its accounts and accounts receivable. The Newtek loan was guaranteed by Clearwater Transportation Management Co., LLC ("Clearwater Management"), Debtor's general partner, and Clearwater Real Estate, LLC ("Clearwater Real Estate") (a real estate company owned by Mr. Merrill that owns real estate in San Antonio, Bexar County, Texas and Shertz, Comal County, Texas). Mr. Merrill also personally executed a guaranty in favor of Newtek. Clearwater Real Estate executed deeds of trust on its two (2) pieces of real property to further secure the Newtek loan. Newtek filed multiple UCC-1 financing statements against the Debtor as well as Dollar Rent A Car, Thrifty Car Rental and Hertz, Debtor's DBAs. The Newtek loan has a ten (10) year term and a variable interest rate of prime plus 2.75 % which changes every quarter. The current monthly payment is $8,058.04. This loan is current and the current balance is approximately $641,519.00. Again, this is an SBA Guaranteed Loan, SBA Loan No. PLP 10386470-09.

4834-2093-8887.1
117928\000001

c. <u>IOU Central Inc., dba IOU Financial Loan</u>:

Debtor executed the *Promissory Note for Commercial Loan* (the "IOU Note") on November 26, 2018 in favor of IOU Central Inc. d/b/a IOU Financial ("IOU Financial") in the loan amount of $275,000, with a gross loan amount/principal of $297,000. This loan also included a "Loan Guarantee Fee" of $57,750. This loan is to be repaid in sixty-six (66) payments of $5,710.21 each at an interest rate of 9.25%. This fifteen (15) month loan also provides for the monthly repayment of the Loan Guarantee Fee in the amount of $875.00 per month. There was an origination fee in the amount of $22,000 deducted from the loan proceeds disbursed at closing. This loan is paid through ACH debits from Debtor's Frost Bank operating account. The IOU Note contains a general security agreement in favor of IOU Financial with the purported security agreement covering all assets of Debtor. The UCC search run by Debtor does not reflect a UCC-1 financing statement filed in favor of IOU Central Inc. or IOU Financial although a UCC-1 financing statement was filed by "CT Corporation System, as representative" on December 3, 2018, covering essentially all of Debtor's assets, which might relate to this loan.

d. <u>Pearl Delta Funding LLC Factoring Agreement</u>:

On November 26, 2018, Debtor entered into a *Revenue Purchase Agreement* with Pearl Delta Funding, LLC ("Pearl Delta Funding"). The *Revenue Purchase Agreement* provided that Pearl Delta Funding would purchase $382,019 of Debtor's accounts, contract rights and other entitlements arising from or relating to the payment of monies from Debtor's customers and/or other third party payors (the "Receipts" or "Payments"). The purchased amount of accounts was four percent

4834-2093-8887.1
117928\000001

(4%) of Debtor's accounts and the purchase price was $276,825. Essentially, this is a factoring arrangement with Pearl Delta Funding and the factoring obligations are paid through ACH debits on a weekly basis in the amount of $10,612 such that the purchased amount of receivables is to be paid in approximately thirty-six (36) weeks. The Revenue Purchase Agreement provides that Pearl Delta Funding is the owner of the purchased receivables but also contains a grant of a security interest to secure the obligations due under the Revenue Purchase Agreement on all assets of Debtor. From the UCC search performed, it does not appear that Pearl Delta Funding has filed a UCC-1 financing statement. The Pearl Delta Funding obligation was guaranteed by Clearwater Management Co. and Clearwater Real Estate. The current balance owed is approximately $350,183.00. Debtor is current on this obligation.

e. <u>Funding Metrics, LLC d/b/a Lendini Factoring Agreement</u>:

On December 19, 2018, Debtor entered into the <u>Merchant Agreement</u> with Funding Metrics, LLC d/b/a Lendini ("Lendini") for the purchase and sale of future receivables. The purchased amount of receivables was $280,000 for a purchase price of $200,000. The purchased receivables equate to 3.38% of Debtor's receivables. The Lendini obligations are repaid through ACH debits on a daily basis in the amount of $2,121.22. Like the Pearl Delta Funding factoring arrangement, the definition of what was purchased is all of Debtor's future accounts, contract rights and other entitlements (the "Receipts") and the Lendini Agreement provides for a security interest in favor of Lendini. Like Pearl Delta Funding, it does not appear that Lendini has filed a UCC-1 financing statement. Debtor is current on this obligation and the balance owed is approximately $271,515.00.

4834-2093-8887.1
117928\000001

8.    Debtor anticipates that FC Marketplace/Pioneer Park, Newtek, IOU Financial, Pearl Delta Funding, Lendini and/or other parties with contractual agreements with Debtor may assert an interest in Debtor's "Cash Collateral," credit card receipts, or other funds, receipts, or receivables of Debtor based on their agreements and non-bankruptcy law.

## C.    Vehicle Leasing and Financing Agreements

9.    Debtor has approximately 365 vehicles in its rental car fleet. Debtor currently "finances" its rental car fleet through lease agreements with two (2) vehicle leasing companies and vehicle fleet loans. Debtor has a *Master Lease Agreement* with Hinkley's, Inc., d/b/a Hincklease, Inc. ("Hincklease"), dated effective February 26, 2007 (the "Hincklease Lease"). Debtor has 230 cars under lease with Hincklease. Clearwater Transportation Management Co., Inc. has executed a guaranty of the Hincklease Lease. Debtor's monthly obligation under the Hincklease Lease is approximately $120,000.00

10.    Debtor also has a *Master Vehicle Lease Agreement* with Selig Leasing Company, Inc. (the "Selig Lease") and approximately 57 cars are covered by that lease agreement. Debtor's monthly Selig Lease obligations are approximately $50,000.00.

11.    Debtor further finances its rental car fleet through a *Master Loan and Security Agreement (Daily Rental Fleet Financing)* (the "Bancorp Loan Agreement') with Bancorp Bank ("Bancorp"), dated October 9, 2015, in the Maximum Loan Amount of $1,250,000 (the "Bancorp Loan"). The Bancorp Loan covers approximately 110 vehicles and the balance on the Bancorp Loan is approximately $1,500.00. Mr. Merrill and Clearwater Real Estate have guaranteed the Bancorp Loan. Debtor's monthly Bancorp obligations are approximately $57,000.00

4834-2093-8887.1
117928\000001

12.     Under the Hincklease Lease and the Selig Lease, the vehicles are titled in the lessor. Under the Bancorp Loan, Bancorp is listed as lienholder and holds the titles to Debtor's vehicles.

13.     Debtor additionally has one vehicle, a 2017 Cadillac Escalade, financed through GM Financial with a monthly payment of $2,770.81 and balance due of $33,249.72 as of January 3, 2019. One (1) year is left on this loan.

14.     The size and makeup of Debtor's vehicle fleet is not static. Periodically, Debtor obtains new vehicles from the major automobile manufacturers (General Motors, Ford, Fiat, Chrysler, Hyundai, Nissan, etc.). Due to various state and federal rules and regulations related to the sale of motor vehicles, and general industry practices, the new vehicles are shipped by the manufacturer to Debtor's locations but the vehicle "sales" are made by one of the automobile dealerships that participate in the rental car company programs. In connection with Debtor's ordering of new vehicles and the delivery of those vehicles, Debtor contacts one of the vehicle leasing companies (Hincklease or Selig) or Bancorp and adds the particular vehicles in question to the vehicle lease or the Bancorp Loan and the vehicle leasing company or Bancorp pays the relevant dealership and takes title to the vehicle or notes its lien on the title and holds the title, while Debtor puts the vehicle in service in its rental fleet.

15.     As a participant in the Hertz rental car system, Debtor is able to take advantage of certain programs and incentives in connection with the leasing/financing of vehicles for its fleet. As part of those programs, and as provided in its vehicle purchase and leasing agreements, Debtor is required to have the vehicle in its rental fleet for a specified minimum period of time, usually 6 months to a year, but thereafter may sell the vehicle, paying off the remaining lease or loan obligation with respect to the vehicle sold and retaining any funds from the sale in excess of

4834-2093-8887.1
117928\000001

the amount necessary to pay off the remaining lease or loan obligations as "profit". All of the vehicles in Debtor's rental fleet are "at risk" vehicles under Debtor's vehicle master leases and/or fleet vehicle loans such that they are ultimately sold by Debtor rather than being surrendered to the vehicle leasing company or lender. Debtor realizes significant revenue from the sale of its fleet vehicles and, as a result of various incentives and program discounts, its vehicle sales are usually profitable. Debtor's car sales are made through car auctions to car dealers, rather than sales to the general public. It is anticipated that Hincklease, Selig, Bancorp or potentially other parties may assert that any proceeds from the sale of vehicles covered by their agreements are "Cash Collateral".

### III. <u>USE OF CASH COLLATERAL</u>

16. Through this Motion, the Debtor seeks authority to use any Cash Collateral of Debtor's secured lenders or vehicle fleet financing parties in accordance with the interim budget attached to the Interim Cash Collateral Order as **Exhibit 1** (the "<u>Interim Cash Collateral Budget</u>") and, upon final hearing, final authority to use Cash Collateral pursuant to a "Final Cash Collateral Order" and "Final Cash Collateral Budget" to be filed by Debtor prior to the final cash collateral hearing. Debtor also seeks authority to grant replacement liens to Debtor's secured lenders on post-petition assets of the Debtor to the same extent, validity, and priority as their pre-petition liens, as adequate protection for any diminution in the value of their Cash Collateral. The Debtor cannot operate without the use of Cash Collateral, and the expenses set forth in the Interim Cash Collateral Budget are appropriate and absolutely necessary for the Debtor to preserve its going concern value and the value of its bankruptcy estate. *See* Merrill Declaration at ¶ 25 and 26. The replacement liens being granted to any secured creditors adequately protect the purported secured creditors from the potential diminution in the value of their interest in the

4834-2093-8887.1
117928\000001

Cash Collateral caused by the Debtor's use of that Cash Collateral pursuant to the Interim Cash Collateral Budget as Debtor will be creating new accounts and credit card receivables from its continued operations. Likewise, continuing to pay its obligations to its factoring companies in the ordinary course as described herein and honoring its "pay-off" obligations to its fleet vehicle lessors and lenders as provided herein provides adequate protection to those parties.

## IV.     RELIEF REQUESTED

17.     By this Motion, pursuant to 11 U.S.C. §§ 105, 361, and 363, and Bankruptcy Rules 2002, 4001, 6003 and 6004, the Debtor seeks, among other things, the following:

    a.     authorization for the Debtor to use Cash Collateral on an interim and final basis, and the granting of adequate protection to any secured creditors for such use of their Cash Collateral and any diminution in value of their interest in Cash Collateral;

    b.     pursuant to Bankruptcy Rule 4001, that an emergency interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of the Interim Cash Collateral Order;

    c.     that this Court schedule the Final Hearing to consider entry of a Final Cash Collateral Order authorizing the use of Cash Collateral and the grant of adequate protection on a final basis; and,

    d.     waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Cash Collateral Order and any Final Cash Collateral Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

## V.     BASIS FOR EMERGENCY RELIEF

18.     The Debtor brings this Motion on an emergency basis given the immediate and irreparable harm that the Debtor will suffer if it is denied the immediate ability to use Cash Collateral, which is necessary to sustain ongoing business operations, pay its employees and satisfy other working capital needs, through the operation of its Cash Management System, and to continue to operate its rental car locations for the benefit of its customers and creditors.

19. Absent the continued use of Cash Collateral, the Debtor would likely have to cease business operations to the material detriment of its rental customers, secured creditors, vehicle fleet lessors, other creditors, contract counter-parties, stakeholders, and other parties in interest. Therefore, the Debtor needs to ensure the availability of such funds now. This liquidity is particularly necessary for the Debtor to demonstrate to its employees, customers, creditors, contract counterparties, suppliers, vendors, parties in interests and stakeholders that the Debtor will be able to continue operating normally and properly notwithstanding its bankruptcy filing, and can adequately fund its reorganization process.

## VI. APPLICABLE AUTHORITY

### A. Adequate Protection and Cash Collateral

20. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or court approval. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. *See* 11 U.S.C. § 363(e).

21. The Debtor submits that the treatment proposed herein and in the proposed Interim Cash Collateral Order and to be proposed in the Final Cash Collateral Order is sufficient to adequately protect the interests of any purported secured creditors asserting an interest in the Cash Collateral.

22. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987) (citing *In re Martin*, 761 F.2d 472 (8th Cir. 1985)); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D. N.Y. 1996); *In re Realty Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D. N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725

(Bankr. S.D. N.Y. 1986). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D. N.Y. 1992); *In re Beker*, 58 B.R. at 736; *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D. N.Y. 1996).

23.     The Debtor anticipates that several parties will assert liens on and/or interests in the Cash Collateral. As adequate protection for the use of any Cash Collateral, Debtor purposes the following forms of adequate protection, to the extent of any diminution in value of the Cash Collateral:

a. <u>Authorization to Use Cash Collateral</u>. The Debtor shall be authorized to use Cash Collateral solely to pay expenses in the amounts and at the times listed in the Interim Cash Collateral Budget; <u>provided, however</u>, that the Debtor shall have authority to use Cash Collateral in excess of the amounts set forth in the Interim Cash Collateral Budget to the extent such a variance does not exceed 20% on a line item or aggregate basis.

b. <u>Duration</u>. The Debtor's interim authorization to use Cash Collateral shall last until conclusion of the Final Hearing.

c. <u>Adequate Protection for Secured Lenders</u>. The Debtor shall provide the following forms of adequate protection (collectively, the "<u>Adequate Protection</u>") for any diminution ("<u>Diminution</u>") in the value of the Cash Collateral resulting from the Debtor's use thereof after the Petition Date to any party with a valid interest in Debtor's Cash Collateral.

    i. <u>Replacement Lien</u>: Any secured creditor with a validly granted, enforceable, and properly perfected lien or security interest in Debtor's Cash Collateral, shall have a valid, perfected, and enforceable replacement lien and security interest (the "<u>Replacement Lien</u>") in all assets of the Debtor arising after the Petition Date of the same type as that creditor's prepetition collateral, to the same extent, validity, perfection, enforceability, and priority of such creditor's liens and security interests as of the Petition Date (the "<u>Postpetition Collateral</u>").

    ii. <u>Status of Replacement Lien</u>. The Replacement Lien shall be in addition to all other rights of the secured creditors, including the secured creditor's liens and security interests in any prepetition collateral.

d. <u>Adequate Protection for Factors</u>: Pearl Delta Funding and Lendini have agreements with Debtor where they purportedly "purchased" Debtors "accounts" or "receipts". Those

4834-2093-8887.1
117928\000001

"factoring" agreements have both purchase language and also purport to grant liens and security interests against Debtor's assets. On an interim basis, while Debtor and these parties address the nature of these parties' interests, Debtor proposes to continue to pay these parties as provided in their agreements (daily ACH payments to Lendini and weekly to Pearl Delta Funding) (the "Factor ACH Debits"). Any post-Debtor payment of the Factor ACH Debits shall be recoverable from either Pearl Delta Funding or Lendini, as applicable, if it is ultimately determined by the Bankruptcy Court that such funds should not have been paid to those parties for any reason. In that regard, the Interim Cash Collateral Order provides that the rights of all parties are reserved and protected with regard to any such determination.

e. Adequate Protection for Vehicle Lessors or Vehicle Fleet Lenders: In the event that Debtor sells any vehicle under its vehicle fleet leases or its fleet vehicle loan agreements, Debtor shall pay such lessor or lender the "pay off" amount due for that vehicle under such lessor's or lender's agreement with Debtor and Debtor shall be entitled to retain any excess funds from the sale for use to fund its operations.

The foregoing is only a summary. The terms of the Debtor's interim use of Cash Collateral are set forth in detail in the attached proposed Interim Cash Collateral Order. In the event of any inconsistency between the above summary and the proposed Interim Cash Collateral Order, the terms of the proposed Interim Cash Collateral Order shall control. Interested parties should review the proposed Interim Cash Collateral Order for a complete and accurate understanding.

**B.** **The Use of Cash Collateral is Necessary to Preserve Assets of the Estate**

24.     It is essential that the Debtor immediately instill its customers, creditors, lessors, contracted counter-parties, vendors, service providers, and suppliers with confidence in its ability to transition its business smoothly into the chapter 11 process and to operate normally in that environment. The use of Cash Collateral is necessary to continue, among other things, the orderly operation of the Debtor's business.

**C.** **Interim Approval Should be Granted**

25.     Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use cash collateral may not be commenced before fourteen (14) days after the service of the Motion. Fed. R. Bankr. P. 4001. This Court may, however, conduct a preliminary hearing before the

4834-2093-8887.1
117928\000001

expiration of that fourteen-day period and likewise authorize the use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and irreparable harm to the debtor's estate.

26.     In examining requests under this Bankruptcy Rule, courts apply the business-judgment standard as is applicable in other business decisions. *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). Without the continued use of cash collateral, the Debtor will have no ability to operate its business. Among other things, the Debtor will not be able to pay its post-petition obligations to creditors and contract counter-parties, fund its payroll, or pay for the goods and services necessary to successfully reorganize the business, each of which is necessary to ensure undisrupted service to its customers. The Debtor's failure to honor any of these obligations will cause immediate and irreparable harm to the Debtor's estate. The Debtor submits that, for the reasons set forth herein, the immediate use of Cash Collateral, on an interim basis, as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtor's business and its bankruptcy estate.

27.     Moreover, the Debtor's ability to finance its operations and the availability to the Debtor of sufficient liquidity through the use of cash collateral is critical to the confidence of the Debtor's employees and thus to the preservation and maintenance of the going-concern value of the Debtor's estate. The Debtor requests that the Court conduct an emergency preliminary hearing on the Motion and authorize the Debtor to use cash collateral from and after the entry of the Interim Cash Collateral Order until the Final Hearing as requested herein. Such authorization will ensure the Debtor maintains ongoing operations and avoids immediate and irreparable harm and prejudice to its estate and all parties in interest pending such Final Hearing.

4834-2093-8887.1
117928\000001

**D. Request for a Final Hearing and Final Authority to Use Cash Collateral**

28.     In connection with final authority to use Cash Collateral and the Final Hearing and Final Cash Collateral Order, Debtor proposes the following:

      (a)     The Final Hearing be set on a date and at a time determined by the Court.

      (b)     Debtor file and serve a proposed Final Cash Collateral Order with a proposed Final Cash Collateral Budget by a date and time determined by the Court. The Final Cash Collateral Order shall include Debtor's proposed form of Adequate Protection to parties who might assert an interest in Debtor's "Cash Collateral".

      (c)     The Court set a deadline for any party to object to this Motion and the relief requested herein, the proposed Final Cash Collateral Order, and/or the Final Cash Collateral Budget by filing such objection and serving such objection on Debtor's counsel, Patrick L. Huffstickler, Dykema Gossett PLLC, 112 E. Pecan Street, Suite 1800, San Antonio, Texas 78205, and the Office of the United States Trustee, 615 E. Houston St., Ste. 533, San Antonio, TX 78205. Any such objection shall set out in detail any purported liens, security interests, encumbrances, or other purported interests in Cash Collateral or other assets of the Debtor and Debtor's bankruptcy estate, or any and all assets, funds or other property in the possession of or under the control of the Debtor, and include as exhibits, or in a separate contemporaneous filing, any and all relevant loan, security, mortgage, pledge or other documents that purport to create a lien, pledge, encumbrance, or other interest in the cash collateral or other assets of Debtor or Debtor's Estate, or property or funds in the possession of or under the control of Debtor. Such objection shall also detail the adequate protection which such objecting party believes is appropriate for Debtor's use of Cash Collateral or other funds or assets of Debtor's Estate.

29.     As noted above, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing at a date and time of the Court's convenience that will ensure adequate notice and due process to all parties-in-interest in these cases. Debtor suggests such date should be approximately 30 days after entry of the Interim Cash Collateral Order so that Debtor may negotiate with its various purported secured creditors and any other parties asserting an interest in Debtor's cash collateral or other assets and final use of Cash Collateral.

30.     The Debtor respectfully requests that it be authorized to a serve a copy of the signed Interim Cash Collateral Order, which fixes the time and date for the Final Hearing on this Motion and for the filing of the Final Cash Collateral Order and Final Cash Collateral Budget and any objections thereto, by first-class mail on the Limited Service List.     The Debtor respectfully requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

## VII.     NOTICE

31.     No trustee, examiner, or statutory creditors' committee has been appointed in this Chapter 11 case.  This Motion has been mailed to the parties on Debtor's proposed Limited Service List which include: (i) the Office of the United States Trustee for the Western District of Texas; (ii) parties Debtor believes may assert liens on Debtor's assets; (iii) the twenty (20) largest unsecured creditors of the Debtor's bankruptcy estate; (iv) the relevant city authorities where Debtor has its rental car concessions; (v) Taxing and Regulatory Agencies; and (vi) its vehicle fleet lessors and lenders.  The Debtor respectfully submits that no further notice of this Motion is required.

## VIII.     CONCLUSION

WHEREFORE, the Debtor respectfully requests (i) the entry of an order granting interim use of Cash Collateral; (ii) providing for adequate protection for Debtor's interim use of Cash Collateral; (iii) setting a Final Hearing on the Debtor's use of Cash Collateral; (iv) entering a Final Cash Collateral Order granting Debtor final authority to use Cash Collateral and providing for adequate protection as appropriate in connection therewith, and (v) granting all other and further relief as is just and proper.

4834-2093-8887.1
117928\000001

Dated: February 7, 2019.

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Patrick L. Huffstickler*
    Patrick L. Huffstickler
    State Bar No. 10199250
    phuffstickler@dykema.com
    Jesse T. Moore
    State Bar No. 24056001
    jmoore@dykema.com
    112 East Pecan Street, Suite 1800
    San Antonio, Texas 78205
    (210) 554-5500
    (210) 226-8395 (Fax)

**PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2019, a true and correct copy of the foregoing document was served by U.S. first-class mail to the parties on the attached Service List.

    */s/ Patrick L. Huffstickler*
    Patrick L. Huffstickler

4834-2093-8887.1
117928\000001

Last Revised February 7, 2019

# Clearwater Transportation, Ltd.

## Limited Service List

**Debtor:**
Clearwater Transportation, Ltd.
6013 Fountainwood
San Antonio, TX 78233
**Via Mail**

**Attorney for Debtor**
Patrick L. Huffstickler
Dykema Gossett PLLC
112 E. Pecan St., #1800
San Antonio, TX 78205
**ECF:** phuffstickler@dykema.com

**Office of the U.S. Trustee**
615 E. Houston, Suite 533
San Antonio, TX 78205
**Via ECF:** USTP.Region07@usdoj.gov

### LENDERS/POTENTIAL SECURED CREDITORS

Funding Circle
FC Marketplace, LLC
747 Front St., 4th Fl.
San Francisco CA 94111
**Via Mail**

Newtek Small Business Finance LLC
1981 Marcus Ave., #130
Lake Success NY 11042
**Via Mail**

IOU Central Inc.
600 TownPark Lane, Suite 100
Kennesaw, GA 30144
**Via Mail**

Funding Metrics, LLC
dba Lendini
884 TownCenter Drive
Langhome, PA 19047
**Via Mail**

Pioneer Park LLC
P.O. Box 398321
San Francisco, CA 94139-8321
**Via Mail**

GM Financial
P.O. Box 183593
Arlington, TX 76096-3834
**Via Mail**

Pearl Capital
Pearl Delta Funding
100 William Street, Suite 900
New York, NY 10038
**Via Mail**

### TAXING AND REGULATORY AGENCIES

Bell County Appraisal District
P.O. Box 390
Belton TX 76513-0390
**Via Mail**

Bexar County Tax Office
P.O. Box 2903
San Antonio TX 78299-2903
**Via Mail**

City of Austin
Controller's Office
P.O. Box 2920
Austin TX 78768-2920
**Via Mail**

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346
**Via Mail**

Texas Comptroller of Public Accounts
Revenue Accounting Division -
Bankruptcy Section
P.O. Box 13528 Capitol Station
Austin, TX 78711
**Via Mail**

Texas Workforce Commission
TWC Building - Regulatory Integrity
Division
101 East 15th Street
Austin, TX 78778
**Via Mail**

Tax Appraisal District of Bell County
P.O. Box 390
Belton, TX 76513-0390
**Via Mail**

Travis County Tax Office
Bruce Elfant, Tax Assessor-Collector
P.O. Box 149328
Austin, TX 78714-9328
**Via Mail**

Tom Green Appraisal District
2302 Pulliam St.
San Angelo TX 76905
**Via Mail**

4840-4920-0263.1
117928\000001
02/07/2019 5:15 PM

Albert Uresti, MPA, PCC
Bexar County Tax Assessor-Collector
P.O. Box 2903
San Antonio, TX 78299-2903
**Via Mail**

United States Department of Justice -
All Divisions:
United States Attorney, Civil Process
Clerk
N. W. Loop 410, Suite 600
San Antonio, TX 78216
**Via Mail**

## AIRPORT CONCESSION PARTIES

City of Austin
c/o U.S. Bank, N.A.
P.O. Box 70870
Saint Paul MN 55170-9705
**Via Mail**

Austin CONRAC, LLC
Attn: Marshall A. Fein, COO
12130 Colwick
San Antonio, TX 78216
**Via Mail**

Director of Aviation
THE CITY OF AUSTIN
Austin-Bergstrom International Airport
3600 Presidential Blvd., Suite 411
Austin, TX 78719
**Via Mail**

The Airport Properties Manager
Department of Aviation
THE CITY OF AUSTIN
Austin-Bergstrom International Airport
3600 Presidential Blvd., Suite 411
Austin, TX 78719
**Via Mail**

City of Austin
City Clerk
301 W. Second St.
Austin, TX 78701
**Via Mail**

City of Killeen
8101 S. Clear Creek Rd., Box C
Killeen, TX 76549
**Via Mail**

Killeen-Fort Hood Regional Airport
Attn: Executive Director of Aviation
8101 S. Clear Creek Rd., Box C
Killeen, TX 76549
**Via Mail**

City of Killeen
Attn: City Attorney
101 N. College St., 1st Floor
Killeen, TX 76541
**Via Mail**

City of San Angelo
San Angelo Regional Airport-Mathis Field
8618 Terminal Circle, Ste. 101
San Angelo, TX 76904
**Via Mail**

City Attorney's Office
72 W. College Avenue
San Angelo, TX 76903
**Via Mail**

Austin Conrac, LLC
Conrac Managing, c/o Conrac Solutions
981 Lowell Ave. SW, #125
Renton, WA 98057
**Via Mail**

## TOP 20 UNSECURED CREDITORS (EXCLUSIVE OF OTHER CATEGORIES)

ATS Processing Services
1150 N. Alma School Rd.
Mesa, AZ 85201
**Via Mail**

Calhoun, Thomson & Matza
9500 Aboretum Blvd., #120
Austin, TX 78759
**Via Mail**

Dent Crafters
166 Briar Forest Dr.
Bastrop, TX 78602
**Via Mail**

Highway Toll Administrations
66 Powerhouse Rd., #103
Roslyn Heights, NY 11577
**Via Mail**

Town North Nissan
9160A Research Blvd.
Austin, TX 78758
**Via Mail**

Town North Nissan
9160A Research Blvd.
Austin, TX 78758
**Via Mail**

## CONTRACT AND VEHICLE LEASE PARTIES

Hincklease, Inc.
Attn: Bill Jeffries
2305 President's Dr., Ste. F
Salt Lake City UT 84120
**Via Mail**

Union Leasing, Inc.
P.O. Box 75850
Chicago, IL 60675-5850
**Via Mail**

Harbor Properties
850 S. Hermitage Road, Suite B1
Hermitage, PA 16148
**Via Mail**

Bancorp Bank
Attn: Paul F. Pollock
3755 Park Lake St.
Orlando FL 32803-5265
**Via Mail**

Selig Leasing Company, Inc.
Attn: Steve Schaefer
2510 S. 108th St.
West Allis WI 53227
**Via Mail**

The Bancorp
409 Silverside Road
Suite 105
Wilmington, DE 19809
**Via Mail**

Commercial Fleet Leasing
The Bancorp Bank
Attn: Paul F. Pollock
626 Jacksonville Road, Suite 205
Warminster, PA 18974
**Via Mail**

Hertz Global Holdings
Thrifty Rent-A-Car System, Inc.
Dollar Rent A Car, Inc.
Attn: Robert M. Barton
8501 Williams Road
Estero, FL 33928
**Via Mail**

Hinckley's Inc.
Dba Hincklease, Inc.
2309 South State Street
Salt Lake City, UT 84115
**Via Mail**

DTG
Dba DTG Operations, Inc.
Attn: Lockbox Dept. 673
6242 E. 41st Street
Tulsa, OK 74135
**Via Mail**

## NOTICES OF APPEARANCE

# Exhibit "A"



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11 CASE** |
| | § | |
| **CLEARWATER TRANSPORTATION, LTD.,** | § | **CASE NO. 19-50292-cag** |
| | § | |
| **Debtor.**[1] | § | |

## INTERIM ORDER (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

The Court has considered the Debtor's *Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Motion")[2] filed by the Debtor in the above-captioned Case.

---

[1] The Debtor's address is 6013 Fountainwood, San Antonio, Texas 78233 and the last four digits of its Federal Tax Identification number are 2020.

[2] Capitalized terms not otherwise defined herein have the definitions ascribed in the Motion.

The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may constitutionally enter this interim order on the Motion; (iii) the interim relief requested in the Motion and granted herein is in the best interests of the Debtor, its estate, and its creditors and is necessary to avoid immediate and irreparable harm to the Debtor and its estate (the "Estate"); (iv) Debtor is likely to prevail under Bankruptcy Code Section 363(e) at the Final Hearing (as defined below); (v) proper and adequate notice of the Motion has been given under the circumstances and that no other or further notice is necessary; (vi) all objections to the Motion have been resolved by this Order or are overruled in their entirety; and (vii) upon the record herein, after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

**IT IS THEREFORE ORDERED** as follows:

1.      The Motion is **GRANTED** on an interim basis as set out herein.

2.      The Debtor is authorized to use Cash Collateral on an interim basis pursuant to the Interim Cash Collateral Budget attached hereto as Exhibit 1. Debtor shall use its Cash Collateral solely to pay the expenses in the amounts and at the times provided in the Interim Cash Collateral Budget; provided, however, that the Debtor shall have authority to use Cash Collateral in excess of the amounts set forth in the Interim Cash Collateral Budget on a weekly basis to the extent that such variance does not exceed twenty percent (20%) on a line item or weekly aggregate basis.

3.      The Debtor's interim authorization to use Cash Collateral provided by this Interim Cash Collateral Order shall last until conclusion of the Final Hearing on the Motion or at such

other date and time and in the manner set out in any other or further Order of the Court addressing Debtor's use of Cash Collateral.

4.     As adequate protection for any diminution in value of a creditor's interest in Cash Collateral resulting from Debtor's use thereof after the Petition Date, any party with a validly granted, properly perfected and properly enforceable lien or security interest under applicable non-bankruptcy law shall be granted (without the necessity of the Debtor or such creditor executing any mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing statements or other documentation) validly perfected and enforceable security interests in, and liens upon, all property of the Debtor and Debtor's Estate arising post-petition (the "Post-Petition Collateral") of the same type and nature of the property of Debtor that served as such creditor's pre-petition collateral (but excluding any claims and causes of action of Debtor, including any avoidance actions under the applicable provisions of the Bankruptcy Code or applicable non-bankruptcy law), but only to the extent of the validity, enforceability, perfection and priority of such creditor's security interest and liens in any pre-petition assets of the Debtor (the "Replacement Liens"). The Replacement Liens granted herein in the Post-Petition Collateral shall be in addition to all other rights of such secured creditors, including any secured creditor's liens and security interests in any pre-petition collateral.

5.     As adequate protection for Pearl Delta Funding and Lendini, parties to agreements that purportedly provide for the "purchase" of Debtor's "receipts" or "accounts", adequate protection for those two (2) parties shall consist, on an interim basis, of continued payment to such parties in the ordinary course of business by Debtor pursuant to their agreements with Debtor (*i.e.* daily ACH payments in the amount of $2,121.22 to Lendini and weekly ACH payments in the amount of $10,612.00 to Pearl Delta Funding (collectively, the "Factor ACH

Debits")). Any or all of such Factor ACH Debits shall, however, be subject to recovery by Debtor if it is ultimately determined by the Court that such Factor ACH Debits should not have been paid for any reason. In the event of any such recovery, the Replacement Liens provided for other parties herein shall be applicable to Pearl Delta Funding and Lendini at that point. Further, nothing in this Interim Cash Collateral Order is a determination of the rights of Debtor, Pearl River Funding or Lendini with respect to their agreements and Debtor's receipts and accounts, and the rights of such parties in that regard are preserved and protected.

6. Nothing in this Interim Cash Collateral Order shall be a determination of the rights of Debtor or any purported secured creditor regarding the validity, enforceability, perfection, or priority of any lien, claim or encumbrance of any purported secured creditor against the assets of the Debtor or the Debtor's Estate and the rights of all parties are preserved and protected in that regard.

7. A Final Hearing on the Motion should be held on _____, 2019 at _____ o'clock ____.m. before the Court.

8. Debtor shall file, and serve on the Limited Service List, a proposed form of Final Cash Collateral Order in connection with the Motion on or before February ___, 2019, which proposed form of order shall have attached a Final Proposed Cash Collateral Budget. The proposed form of Final Cash Collateral Order shall set out any proposed final adequate protection for Debtor's use of Cash Collateral.

9. Any party objecting to the Motion and the relief requested therein, the proposed Final Cash Collateral Order, and/or the Final Cash Collateral Budget shall file such objection by February ___, 2019 and serve such objection on Debtor's counsel, Patrick L. Huffstickler, Dykema Gossett PLLC, 112 E. Pecan Street, Suite 1800, San Antonio, Texas 78205, and the

4830-6305-1143.1
02/07/2019 4:51 PM

Office of the United States Trustee, 615 E. Houston St., Ste. 533, San Antonio, TX 78205. Any such objection shall set out in detail any purported liens, security interests, encumbrances, or other purported interests in Debtor's Cash Collateral and/or any other assets of the Debtor and Debtor's Estate, or in any and all other assets, funds, receipts, receivables, or other property in the possession of or under the control of the Debtor, and include as exhibits, or in a separate contemporaneous filing, any and all relevant loan, security, mortgage, pledge or other documents that purport to create a lien, pledge, encumbrance, or other interest in the assets of Debtor or Debtor's Estate, or property, funds, receipts, receivables, in the possession of or under the control of Debtor. Such objection shall also detail the adequate protection which such party believes is necessary and appropriate for Debtor's use of such party's Cash Collateral.

10. This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto.

11. Within three (3) business days after entry of this Interim Order, Debtor shall mail a copy of this Interim Cash Collateral Order to the parties on the Limited Service List and any other parties which Debtor believes may assert an interest in Debtor's Cash Collateral, or other assets or any property or funds under the control of or in the possession of Debtor or Debtor's Estate.

12. The Replacement Liens granted pursuant to this Interim Cash Collateral Order are specifically limited to the diminution in value resulting from Debtor's use of Cash Collateral after the Petition Date and solely to the extent of any such diminution.

13. This Interim Cash Collateral Order is without prejudice to rights of any party in interest to challenge the validity, amount, perfection, priority, extent, or enforceability of any

claim or security interest, lien, encumbrance or other interest in any of Debtor's assets, or any assets under the control of or in possession of Debtor or its Estate.

14.    The Court retains jurisdiction with respect to all matters arising from or related to this Interim Cash Collateral Order and the implementation of this Interim Cash Collateral Order.

### 

Prepared and submitted by:

Patrick L. Huffstickler
State Bar No. 10199250
phuffstickler@dykema.com
Jesse T. Moore
State Bar No. 24056001
jmoore@dykema.com
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

# Exhibit "1"

# INTERIM CASH COLLATERAL BUDGET

Clearwater Transportation, Ltd.

| | |
|---|---|
| Starting date | 2/4/2019 |
| Cash balance alert minimum | $0.00 |

| | Beginning | Week 0204 | Week 0211 | Week 0218 | Week 0225 | Week 0304 | Week 0311 |
|---|---|---|---|---|---|---|---|
| Cash on hand (beginning of week) | $121,000.00 | $121,000.00 | $191,718.00 | $228,652.00 | $295,138.00 | $360,624.00 | $273,413.00 |
| Cash on hand (end of week) | $121,000.00 | $191,718.00 | $228,652.00 | $295,138.00 | $360,624.00 | $273,413.00 | $112,232.00 |

| CASH RECEIPTS | Beginning | | | | | | |
|---|---|---|---|---|---|---|---|
| Rental Car Receipts | | $158,500.00 | $158,500.00 | $158,500.00 | $158,500.00 | $212,500.00 | $212,500.00 |
| Damage Collections | | $4,521.00 | $4,521.00 | $4,521.00 | $4,521.00 | $4,521.00 | $4,521.00 |
| Fleet Incentives | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Vehicle Sales | | | $67,800.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Owner contributions | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL CASH RECEIPTS | | $153,979.00 | $221,779.00 | $153,979.00 | $153,979.00 | $207,979.00 | $207,979.00 |
| Total cash available | $121,000.00 | $274,979.00 | $413,497.00 | $382,631.00 | $449,117.00 | $568,603.00 | $481,392.00 |

| CASH PAID OUT | Beginning | | | | | | |
|---|---|---|---|---|---|---|---|
| American Express | | $0.00 | $0.00 | $6,000.00 | $0.00 | $0.00 | $0.00 |
| Body Shop Repairs | | $5,125.00 | $5,125.00 | $5,125.00 | $5,125.00 | $5,125.00 | $5,125.00 |
| City of Austin - MAGS | | $0.00 | $0.00 | $0.00 | $0.00 | $44,835.00 | $0.00 |
| City of Austin Excess | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| City of Austin - Service Center | | $0.00 | $0.00 | $0.00 | $0.00 | $3,176.00 | $0.00 |
| City of Killeen - Mags/Rent/Excess | | $0.00 | $0.00 | $0.00 | $0.00 | $9,597.00 | $0.00 |
| City of San Angelo - Mags/Rent/Excess | | $0.00 | $0.00 | $0.00 | $0.00 | $9,500.00 | $0.00 |
| Communications/Telephone/Internet | | $4,600.00 | $0.00 | $0.00 | $0.00 | $4,600.00 | $0.00 |
| Comptroller 5% Qtrly | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Contract Labor - Shuttlers | | $1,200.00 | $0.00 | $0.00 | $0.00 | $1,200.00 | $0.00 |
| CONRAC Rent & O&M | | $0.00 | $0.00 | $0.00 | $0.00 | $35,051.00 | $0.00 |
| Credit Card Discounts POS | | $22,500.00 | $0.00 | $0.00 | $0.00 | $22,500.00 | $0.00 |
| Employee Benefit Programs | | $0.00 | $9,000.00 | $0.00 | $9,000.00 | $0.00 | $9,000.00 |
| Fuel - CONRAC | | $2,100.00 | $2,100.00 | $2,100.00 | $2,100.00 | $2,100.00 | $2,100.00 |
| Hertz Statement | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $80,000.00 |
| Insurance Fleet | | $0.00 | $12,000.00 | $0.00 | $0.00 | $0.00 | $12,000.00 |
| Motor Vehicle Rental Tax | | $0.00 | $0.00 | $52,000.00 | $0.00 | $0.00 | $0.00 |
| Office Supplies | | $0.00 | $1,667.00 | $0.00 | $0.00 | $0.00 | $1,667.00 |
| Payroll/PR Fees/Workers Comp | | $0.00 | $67,000.00 | $0.00 | $50,000.00 | $0.00 | $67,000.00 |
| Refuse | | $120.00 | $0.00 | $0.00 | $0.00 | $120.00 | $0.00 |
| Rent/Lease Harbor / Real Estate | | $12,548.00 | $0.00 | $0.00 | $0.00 | $12,548.00 | $0.00 |
| TSD - POS Software | | $6,300.00 | $0.00 | $0.00 | $0.00 | $6,300.00 | $0.00 |
| Utilities | | $1,500.00 | $0.00 | $0.00 | $0.00 | $1,500.00 | $0.00 |
| US Bank Trustee - CFC's | | $0.00 | $0.00 | $0.00 | $0.00 | $45,000.00 | $0.00 |
| Vehicle Repair & Maintenance | | $1,050.00 | $1,050.00 | $1,050.00 | $1,050.00 | $1,050.00 | $1,050.00 |
| Tag and tax | | $5,000.00 | $0.00 | $0.00 | $0.00 | $5,000.00 | $0.00 |
| US Trustee Fee | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Capital One - Toll payments | | $0.00 | $0.00 | $0.00 | $0.00 | $5,000.00 | $0.00 |
| Vehicle Payoffs | | $0.00 | $65,685.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SUBTOTAL | | $62,043.00 | $163,627.00 | $66,275.00 | $67,275.00 | $214,202.00 | $177,942.00 |
| NP IOU Financial | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| NP Pearl Delta Funding | | $10,612.00 | $10,612.00 | $10,612.00 | $10,612.00 | $10,612.00 | $10,612.00 |
| NP Funding Metrics - Lendini | | $10,606.00 | $10,606.00 | $10,606.00 | $10,606.00 | $10,606.00 | $10,606.00 |
| FC Marketplace-Pioneer Park | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| NP Newtek SBA | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| NP Bancorp - Fleet | | $0.00 | $0.00 | $0.00 | $0.00 | $57,000.00 | $0.00 |
| NP GM Financial - Fleet | | $0.00 | $0.00 | $0.00 | $0.00 | $2,770.00 | $0.00 |
| NP Hincklease - Fleet | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $120,000.00 |
| NP Selig - Fleet | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $50,000.00 |
| Owners' withdrawal | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL CASH PAID OUT | | $83,261.00 | $184,845.00 | $87,493.00 | $88,493.00 | $295,190.00 | $369,160.00 |
| Cash on hand (end of week) | $121,000.00 | $191,718.00 | $228,652.00 | $295,138.00 | $360,624.00 | $273,413.00 | $112,232.00 |