## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11 CASE** |
| **CLEARWATER TRANSPORTATION, LTD.,** | § | |
| | § | **CASE NO. 19-50292-cag** |
| **Debtor.**[1] | § | |

## PLAN OF REORGANIZATION OF THE DEBTOR AND DEBTOR-IN-POSSESSION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**Patrick L. Huffstickler**
**State Bar No. 10199250**
**DYKEMA GOSSETT PLLC**
**112 East Pecan Street, Suite 1800**
**San Antonio, Texas 78205**
**Telephone: (210) 554-5500**
**Facsimile: (210) 226-8395**
**Email:  phuffstickler@dykema.com**

**ATTORNEYS FOR DEBTOR**

---

[1] The Debtor's address is 6013 Fountainwood, San Antonio, Texas 78233 and the last four digits of its Federal Tax Identification number are 2020.

# INTRODUCTION

Clearwater Transportation, Ltd. (the "Debtor"), proposes this chapter 11 plan of reorganization (the "Plan") for the resolution of the outstanding claims against, and partnership interests in, the Debtor. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtor's history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, and certain related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    *"ABIA"* means Austin-Bergstrom International Airport.

2.    *"ABIA Bond Indenture"* means the Trust Indenture by and between the City of Austin and Deutsche Bank National Trust Company, as Trustee, related to the Bonds used to fund construction of the Conrac facility at ABIA.

3.    *"ABIA Bond Trustee"* means the Bond Trustee under the ABIA Bond Indenture.

4.    *"ABIA Concession Agreements"* means the ABIA Dollar Concession Agreement and the ABIA Thrifty Concession Agreement.

5.    *"ABIA Dollar Concession Agreement"* means the Rental Car Concession Agreement for Austin-Bergstrom International Airport between the City of Austin, Texas and Clearwater Transportation, Ltd., d/b/a Dollar Car Rental, including any amendments.

6.    *"ABIA Service Center Lease"* means the Rental Car Service Area Lease Agreement between City ABIA and Debtor, and any amendments, modifications, Letters of Intent related thereto or documents essential thereto or integrated therewith.

7.    *"ABIA Thrifty Concession Agreement"* means the Rental Car Concession Agreement for Austin-Bergstrom International Airport between the City of Austin, Texas and Clearwater Transportation, Ltd., d/b/a Thrifty, including any amendments.

8.    *"Actual Pecuniary Loss Claim"* means any Claim under Section 365(b)(1)(B) of the Bankruptcy Code in connection with any Executory Contract or Unexpired Lease assumed by Debtor.

9. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; and (b) Allowed Professional Claims in the Chapter 11 Case.

10. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

11. "*Allowed*" means, as to a Claim or an Interest, a Claim or an Interest allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable. For the avoidance of doubt, (a) there is no requirement to file a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim under the Plan, and (b) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable nonbankruptcy law.

12. "*Assumed Executory Contract and Unexpired Leases Schedule*" means any schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time, which schedule may be included in a Plan Supplement filed by Debtor.

13. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

14. "*Bancorp*" means Bancorp Bank.

15. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

16. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

17. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the Bankruptcy Court, as applicable.

18. "*Business Day*" means any day other than a Saturday, Sunday, or other day on which the New York Stock Exchange or the NASDAQ are closed for trading.

19. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

20. "*Cash Collateral Order*" means any order authorizing the use of cash collateral.

21. "*Cause of Action*" or "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and right to assert legal

3

responsibility against a third party of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

22. "*Chapter 11 Case*" means the bankruptcy case pending for Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

23. "*City TL*" means the City of Austin in any capacity related to the Town Lake Park Community Events Center Venue Project Bonds Series 1999, related Bond Indenture, and the City Ordinance and 5% Rental Vehicle Tax related thereto.

24. "*City ABIA*" means the City of Austin in any capacity in connection with any and all matters related to the Austin Bergstrom International Airport, including the Conrac Subleases, the ABIA Concession Agreements, the Service Center Lease, the Master Lease and the Bond Indenture.

25. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code.

26. "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court through the Bankruptcy Clerk's office.

27. "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

28. "*Clearwater Real Estate*" means Clearwater Real Estate, LLC.

29. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

30. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in this Plan hereof having been (a) satisfied or (b) waived.

31. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

32. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

33. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

34. *"Conrac"* means Austin Conrac, LLC.

35. *"Conrac Dollar Sublease"* means the Consolidated Rental Car Facility Sublease Agreement for Austin-Bergstrom International Airport among Austin Conrac, the City of Austin and Clearwater Transportation, Ltd. d/b/a Dollar Car Rental, and any amendments.

36. *"Conrac Subleases"* means the Conrac Dollar Sublease and the Conrac Thrifty Sublease.

37. *"Conrac Thrifty Sublease"* means the Consolidated Rental Car Facility Sublease Agreement for Austin-Bergstrom International Airport among Austin Conrac, the City of Austin and Clearwater Transportation, Ltd. d/b/a Thrifty, and any amendments.

38. *"Consummation"* means the occurrence of the Effective Date.

39. *"Cure"* means a Claim (unless waived or modified by the applicable counterparty) based upon Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

40. *"Disbursing Agent"* means the Reorganized Debtor related to making or facilitating distributions pursuant to the Plan.

41. *"Disclosure Statement"* means the disclosure statement for the Plan, including all exhibits and schedules thereto, to be approved by the Disclosure Statement Order.

42. *"Disclosure Statement Order"* means the Order of the Bankruptcy Court approving a Disclosure Statement for Debtor.

43. *"Disputed"* means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

44. *"Distribution Record Date"* means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Confirmation Hearing.

45. *"Dollar Franchise Agreement"* means the Dollar Rent A Car, Inc. Franchise Agreement between Debtor and Dollar Rent A Car, Inc. and all related agreements between Debtor and Dollar Rent A Car, Inc.

46. *"Effective Date"* means the date upon which the Plan is Consummated.

47. *"Employee Benefits Programs"* means the employee benefits programs offered by Debtor to its employees, including those which are offered to and administered by ADP for Debtor's employees.

5

48.     "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

49.     "*Estate*" means as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

50.     "*Executory Contract*" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

51.     "*FC Marketplace*" means FC Marketplace, LLC, as Servicer for Pioneer Park LLC.

52.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

53.     "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court and/or the Bankruptcy Clerk's office in the Chapter 11 Case.

54.     "*Final Order*" means as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

55.     "*Franchise Agreements*" means the Dollar Franchise Agreement and the Thrifty Franchise Agreement.

56.     "*Franchisors*" means Dollar Rent A Car, Inc. and Thrifty Rent-A-Car System, LLC.

57.     "*General Unsecured Claim*" means any Claim other than an Administrative Claim, a Professional Claim, a Secured Tax Claim, a Priority Tax Claim, an Other Secured Claim, an Other Priority Claim, or a claim under Classes 1 through 7.

58.     "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

59.     "*Hincklease*" means Hinckley's Inc., d/b/a Hincklease.

60.     "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

61.     "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

62.     "*Intercompany Claim*" means any Claim held by Debtor against an Affiliate or by an Affiliate Debtor.

63.     "*Interest*" means any General Partner or Limited Partnership interest in Debtor.

64.     *"IOU Financial"* means IOU Central Inc., d/b/a IOU Financial.

65.     *"Lendini"* means Funding Metrics, LLC, d/b/a Lendini.

66.     *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

67.     *"Liquidation Recovery"* means the amount of consideration equal in value to the amount a Claim or Interest receiving the Liquidation Recovery would receive or retain against the Debtor if such Claim or Interest were liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date, as set forth in the liquidation analysis attached to the Disclosure Statement.

68.     *"Master Lease"* means the Consolidated Rental Car Facility Master Lease for Austin-Bergstrom International Airport, dated as of February 20, 2013, between City ABIA and the Conrac.

69.     *"Newtek"* means Newtek Small Business Finance, LLC.

70.     *"Other Priority Claim"* means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

71.     *"Pearl Delta Funding"* means Pearl Delta Funding, LLC.

72.     *"Person"* has the meaning set forth in section 101(41) of the Bankruptcy Code.

73.     *"Petition Date"* means February 7, 2019, the date on which the Debtor commenced the Chapter 11 Case.

74.     *"Plan Distribution"* means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

75.     *"Plan Objection Deadline"* means the date the Bankruptcy Court establishes as the deadline to File an objection to Confirmation of the Plan.

76.     *"Plan Supplement"* means any ancillary or additional documents filed by Debtor in connection with this Plan to supplement, modify, clarify or add additional information or documents in connection with this Plan and confirmation of this Plan.

77.     *"Priority Tax Claim"* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

78.     *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

79.     *"Professional"* means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330,

331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

80. "*Professional Claim*" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

81. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

82. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

83. "*Rejected Executory Contracts and Unexpired Leases Schedule*" means any schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtor pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time, which schedule may be filed by Debtor.

84. *Reorganized Debtor*" means on or after the Effective Date, the Debtor, Clearwater Transportation, Ltd.

85. "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtor's and the Reorganized Debtor's business on the terms set forth in the Plan.

86. "*Schedule of Retained Causes of Action*" means any schedule of Causes of Action of the Debtor that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time, and which may be filed as a Plan Supplement.

87. "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

88. "*Secured Tax Claim*" means any claim of a taxing authority asserting a valid lien (statutory or otherwise) on assets of the Debtor.

89. "*Selig*" means Selig Leasing Company, Inc.

90. "*Thrifty Franchise Agreement*" means the Thrifty Rent-A-Car System, LLC Franchise Agreement between Debtor and Thrifty Rent-A-Car System LLC and all related agreements between Debtor and Thrifty Rent-A-Car System LLC.

91. "*Unexpired Lease*" means a lease to which one or more of the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

92.    "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

B.    *Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits to the Plan or Disclosure Statement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a

transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtor or the Reorganized Debtor.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such Plan Supplement or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL CLAIMS, PRIORITY AND SECURED TAX CLAIMS, AND OTHER PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims.*

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not

then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtor or the Reorganized Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

B.   *Professional Claims.*

   1.   Final Fee Applications and Payment of Professional Claims.

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 35 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtor shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows, either as agreed between Debtor and the relevant professional, or as the Bankruptcy Court orders.

   2.   Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

C.   *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code, provided, however, that Debtor and a taxing jurisdiction with an Allowed Priority Claim may, by Stipulation filed with the Bankruptcy Court, agree to treatment more favorable than that provided in Section 1129(a)(9)(c) of the Bankruptcy Code.

D.   *Secured Tax Claims.*

Except to the extent that a holder of an Allowed Secured Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement release, and discharge of and in

exchange for each Allowed Secured Tax Claim, each holder of such Allowed Secured Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(D) of the Bankruptcy Code.

Holders of Allowed Secured Tax Claims shall retain their statutory tax liens on assets of the Reorganized Debtor as provided by applicable non-bankruptcy law, provided, however, that all rights of the Debtor and Reorganized Debtor, and any party with an interest in the property subject to the tax lien are preserved and protected in all respects with respect to such holder of an Allowed Secured Tax Claim.

E.      *Other Priority Claims.*

Except to the extent that the holder of an Other Priority Claim agrees to less favorable treatment, each holder of an Allowed Other Priority Claim shall be treated in accordance with the terms set forth in Section 1129 (a)(9)(B) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Pearl Delta Funding, LLC | Impaired | Entitled to Vote |
| Class 2 | Newtek Small Business Finance, LLC | Impaired | Entitled to Vote |
| Class 3 | Bancorp Bank | Impaired | Entitled to Vote |
| Class 4 | FC Marketplace, LLC, as servicer for Pioneer Bank LLC | Impaired | Entitled to Vote |
| Class 5 | Funding Metrics, LLC d/b/a Lendini | Impaired | Entitled to Vote |
| Class 6 | IOU Central Inc., d/b/a IOU Financial | Impaired | Entitled to Vote |
| Class 7 | Frost Bank | Unimpaired | Not Entitled to Vote |
| Class 8 | General Unsecured Claims against Debtor | Impaired | Entitled to Vote |
| Class 9 | Intercompany Claims | Insider | Not Entitled to Vote |
| Class 10 | Existing General Partner Interests | Insider | Not Entitled to Vote |
| Class 11 | Existing Limited Partner Interests | Insider | Not Entitled to Vote |

B.    *Treatment of Claims and Interests.*

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtor and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.    <u>Class 1 - Pearl Delta Funding, LLC</u>

(a)    Class 1 shall consist of the claims of Pearl Delta Funding.

(b)    Proof of claim amount:  $297,123.00.

(c)    Treatment:  The Class 1 claim shall be treated as a factoring claim such that Pearl Delta Funding has purchased a percentage of Debtor's receivables.  Debtor is current on the Pearl Delta Funding obligations and shall continue to pay the Pearl Delta Funding obligations in the ordinary course of business as provided by the Revenue Purchase

Agreement between Debtor and Pearl Delta Funding until Pearl Delta Funding's Allowed claim is paid in full.

(d)     The Class 1 Claimant claims liens on certain assets of Debtor and the Class 1 Claimant shall retain its liens and security interests on the assets of the Reorganized Debtor to the extent such liens and security interest were valid and properly perfected under non-bankruptcy law as of the Petition Date with the same level of priority that existed as of the Petition Date.

2.     Class 2 - Newtek Small Business Finance, LLC

(a)     Class 2 shall consist of the claims of Newtek Small Business Finance, LLC.

(b)     Proof of claim amount:  $634,309.76.

(c)     Treatment:  The Class 2 claim shall be treated as a secured claim equal to the amount of Newtek's Proof of Claim. Debtor believes it is current on its Newtek obligations. Debtor shall continue to pay Newtek under the terms of the Master Loan and Security Agreement between the parties. If Newtek believes that any amounts are due and owing under the Newtek Master Loan and Security Agreement, Newtek shall notify Debtor and Debtor's counsel in writing ten (10) business days before the Plan Objection Deadline of any such obligations and Debtor and Newtek shall either agree on the amount of such obligations and the terms of payment of same, or Newtek shall be required to file an objection to the Plan and the matter shall be submitted to the Bankruptcy Court for determination.

(d)     The Class 2 Claimant shall retain its liens and security interests on the assets of the Reorganized Debtor to the extent such liens and security interest were valid and properly perfected under non-bankruptcy law as of the Petition Date with the same level of priority that existed as of the Petition Date.

3.     Class 3 - Bancorp Bank

(a)     Class 3 shall consist of the claims of Bancorp Bank.

(b)     Proof of claim amount:  $1,435,753.92.

(c)     Treatment:  The Class 3 Claimant asserts liens on certain of Debtor's rental fleet vehicles and other assets.  The Class 3 claim shall be treated as a secured claim.   Debtor shall

continue to pay Bancorp under the terms of the Master Loan and Security Agreement between the parties. Debtor believes it is current with Bancorp but, if Bancorp believes that any amounts are due and owing under the Bancorp Master Loan and Security Agreement, Bancorp shall notify Debtor and Debtor's counsel in writing ten (10) business days before the Plan Objection Deadline of any such obligations and Debtor and Bancorp shall either agree on the amount of such obligations and the terms of payment of same, or Bancorp shall be required to file an objection to the Plan and the matter shall be submitted to the Bankruptcy Court for determination.

(d)     The Class 3 Claimant shall retain its liens and security interests on the assets of the Reorganized Debtor to the extend such liens and security interest were valid and properly perfected under non-bankruptcy law as of the Petition Date with the same level of priority that existed as of the Petition Date.

4.     Class 4 - FC Marketplace, LLC, Servicer For Pioneer Park LLC

(a)     Class 4 shall consist of the claims of FC Marketplace, LLC, as servicer for Pioneer Park LLC.

(b)     Proof of claim amount:  $218,769.67.

(c)     Treatment:  If FC Marketplace votes to accept the Plan, the Class 4 claim shall be treated as a secured claim equal to the amount outstanding owed to FC Marketplace as of the Petition Date. The Class 4 claim shall be paid interest only after the Effective Date until all Cure obligations and Actual Pecuniary Loss Claims of the Conrac and City ABIA have been paid in full at an interest rate agreed to by the parties or determined by the Bankruptcy Court, with such interest paid monthly. Thereafter, the Class 4 claim shall be amortized and paid by the Reorganized Debtor over a time period and at an interest rate agreed to by the parties or determined by the Bankruptcy Court. If FC Marketplace votes to reject the Plan, the Court shall determine the allowed amount of FC Marketplace's secured claim, if any, which shall be paid interest only until all Cure obligations and Actual Pecuniary Loss Claims of the Conrac and City ABIA have been paid in full at an interest rate agreed to by the parties or determined by the Bankruptcy Court, with the principal balance of any Allowed Secured Claim thereafter amortized and paid by the Reorganized Debtor over a time period and at an interest rate agreed to by the parties or

determined by the Bankruptcy Court. Any deficiency shall be treated as an unsecured claim and paid as a general unsecured claim.

(d)     The Class 4 Claimant shall retain its liens and security interests on the assets of the Reorganized Debtor to the extent such liens and security interest were valid and properly perfected under non-bankruptcy law as of the Petition Date with the same level of priority that existed as of the Petition Date.

5.     <u>Class 5 - Funding Metrics, LLC, d/b/a Lendini</u>

(a)     Class 5 shall consist of the claims of Funding Metrics, LLC, d/b/a Lendini.

(b)     Proof of claim amount: $195,151.20.

(c)     Treatment: If Lendini votes to accept the Plan, the Class 5 claim shall be treated as a secured claim equal to the amount outstanding owed to Lendini as of the Petition Date. The Class 5 claim shall be paid interest only until all Cure obligations and Actual Pecuniary Loss Claims of the Conrac and City ABIA have been paid in full at an interest rate agreed to by the parties or determined by the Bankruptcy Court, with such interest paid monthly. Thereafter, the Class 5 claim shall be amortized and paid by the Reorganized Debtor over a time period and at an interest rate agreed to by the parties or determined by the Bankruptcy Court. If Lendini votes to reject the Plan, the Court shall determine the allowed amount of Lendini's secured claim, if any, which shall be paid interest only until all Cure obligations and Actual Pecuniary Loss Claims of the Conrac and City ABIA have been paid in full at an interest rate agreed to by the parties or determined by the Bankruptcy Court, with the principal balance of any allowed Secured Claim thereafter amortized and paid by the Reorganized Debtor over a time period and of an interest rate agreed to by the parties or determined by the Bankruptcy Court. Any deficiency shall be treated as an unsecured claim and paid as a general unsecured claim.

(d)     The Class 5 Claimant shall retain its liens and security interests on the assets of the Reorganized Debtor to the extent such liens and security interest were valid and properly perfected under non-bankruptcy law as of the

Petition Date with the same level of priority that existed as of the Petition Date.

6. <u>Class 6 – IOU Central Inc., d/b/a IOU Financial</u>

    (a)    Class 6 shall consist of the claims of IOU Central Inc., d/b/a IOU Financial.

    (b)    Proof of claim amount:  $275,000.

    (c)    Treatment:  If IOU Financial votes to accept the Plan, the Class 6 claim shall be treated as a secured claim equal to the outstanding owed to IOU Financial as of the Petition Date, less any payments made post-petition under the Cash Collateral Orders entered by the Bankruptcy Court.  The Class 6 claim shall be paid interest only until all Cure obligations and Actual Pecuniary Loss Claims of the Conrac and City ABIA have been paid in full at an interest rate agreed to by the parties or determined by the Bankruptcy Court, with such interest paid monthly.  Thereafter, the Class 6 claim shall be amortized and paid by the Reorganized Debtor over a time period and at an interest rate agreed to by the parties or determined by the Bankruptcy Court.  If IOU Financial votes to reject the Plan, the Court shall determine the allowed amount of IOU Financial's secured claim, if any, which shall be paid interest only until all Cure obligations and Actual Pecuniary Loss Claims of the Conrac and City ABIA have been paid in full at an interest rate agreed to by the parties or determined by the Bankruptcy Court, with the principal balance of any Allowed Secured Claim thereafter amortized and paid by the Reorganized Debtor over a time period and at an interest rate agreed to by the parties or determined by the Bankruptcy Court.  Any deficiency shall be treated as an unsecured claim and paid as a general unsecured claim.

    (d)    The Class 6 Claimant shall retain its liens and security interests on the assets of the Reorganized Debtor to the extent such liens and security interest were valid and properly perfected under non-bankruptcy law as of the Petition Date with the same level of priority that existed as of the Petition Date.

7.     Class 7 - Frost Bank

      (a)     Class 7 shall consist of the contingent secured claims of Frost Bank.

      (b)     Contingent Proofs of claim amounts:  $209,498.86 and $205,400.28.

      (c)     Treatment:  The Frost Bank Contingent Secured Claims relate to two (2) Letters of Credit issued by Frost Bank in favor of City ABIA for the benefit of Debtor with such Letters of Credit secured by Certificates of Deposit of Debtor at Frost Bank.  After confirmation, those Letters of Credit shall remain in place and Frost Bank shall be unimpaired and retain all rights and have all of the obligations as exist under its agreements with Debtor.

      (d)     Voting:  Class 7 is unimpaired and does not vote on the Plan as a result.

8.     Class 8 – General Unsecured Claims against Debtor.

      (a)     Class 8 consists of all General Unsecured Claims against Debtor.

      (b)     Treatment: After all Allowed Claims in Classes 1-6 have been paid in full, but in no event beginning later than the sixty anniversary or the Effective Date, Debtor shall make quarterly pro rata payments to Holders of Allowed General Unsecured Claims so that all General Unsecured Claims are paid in full by the ninth anniversary of the Effective Date. To the extent Debtor has any excess cash available and not necessary for Debtor's ongoing operations and obligations under the Plan on a quarterly basis on or after the fourth anniversary of the Effective Date, Debtor may make quarterly pro-rata distributions to Class 8.

      (c)     Voting: Class 8 is impaired under the Plan. Therefore, such holders are entitled to vote to accept or reject the Plan.

9.     Class 9 – Intercompany Claims

      (a)     Classification: Class 9 consists of all Intercompany Claims.

      (b)     Treatment: Each Allowed Intercompany Claim shall be, at the option of the Debtor, either:

      (i)      Reinstated;

18

(ii)    canceled, released, and extinguished, and will be of no further force or effect; or

(iii)    otherwise addressed at the option of Debtor provided that holders of Class 9 Intercompany Claims will not receive any distribution on account of such Class 9 Claims until all general unsecured claims are paid in full.

(c)    Voting: Class 9 is not entitled to vote to accept or reject the Plan.

10.    <u>Class 10 – Existing General Partner Interests</u>

(a)    Classification: Class 10 consists of all General Partner Interests in Debtor.

(b)    Treatment: Holders of General Partner Interests will not receive any distribution on account of such Interests, which will be retained and continue in effect as of the Effective Date.  Additionally, no future distributions may be made to Debtor's General Partner Interest Holder on account of such General Partner Interest until all general unsecured creditors have been paid in full.

(c)    Voting:  Class 10 is not entitled to vote to accept or reject the Plan.

11.    <u>Class 11 – Existing Limited Partnership Interests</u>

(a)    Classification: Class 11 consists of all Existing Limited Partnership Interests in Debtor.

(b)    Treatment: Holders of Existing Limited Partnership Interests will not receive any distribution on account of such Interests, which will be retained and continue in effect as of the Effective Date.  Additionally, no future distributions may be made to Debtor's Limited Partner Interest Holder on account of such Limited Partner Interest until all general unsecured creditors have been paid in full.

(c)    Voting:  Class 11 is not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.    *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

E.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

F.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

The provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtor and its Estate. Subject to Article VI hereof, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions.*

On or after the Effective Date, the Reorganized Debtor shall take any actions as may be necessary or appropriate to effect the Restructuring Transactions and distributions provided for in the Plan and to consummate the Plan. The actions to implement the Plan may include: (1) the execution and delivery of appropriate agreements or other documents of amendment, modification, merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; and (3) all other actions that the Reorganized Debtor and applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan. The Confirmation Order shall, and shall be deemed to,

pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

C.      *Reorganized Debtor.*

On the Effective Date, the Reorganized Debtor shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtor. The Reorganized Debtor will be entitled to transfer funds between accounts as it determines to be necessary or appropriate to enable the Reorganized Debtor to satisfy the obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtor's historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtor, subject to any applicable limitations set forth in the Plan or in any post-Effective Date agreement, shall have the right and authority to operate and undertake all appropriate actions and transactions under non-bankruptcy law without further order of the Bankruptcy Court.

D.      *Sources of Consideration for Plan Distributions.*

The Reorganized Debtor shall fund distributions under the Plan with: (1) Cash on hand, including Cash from operations; (2) use of setoff or recoupment rights as provided in the Plan, or (3) through contributions by Affiliates or its Interest Owners.

E.      *Partnership Existence.*

Debtor shall continue to exist after the Effective Date as a limited partnership, with all the powers of a limited partnership, pursuant to the applicable law in the jurisdiction in which Debtor is formed and pursuant to its by-laws and other formation documents in effect prior to the Effective Date. After the Effective Date, the respective bylaws and other formation documents of the Reorganized Debtor may be amended or modified without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.      *Vesting of Assets in the Reorganized Debtor.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.      *Actions under the Plan.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) continuation of the Employee Benefit Programs; (2) the distributions related to Allowed Claims; (3) implementation of the Plan; (4) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (5) the rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; and (6) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver any agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor. The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.

H.      *Indemnification Provisions in Organizational Documents.*

As of the Effective Date, the Reorganized Debtor's bylaws shall, to the fullest extent permitted by applicable law, provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, current and former managers, directors, officers, employees, or agents at least to the same extent as the certificate of incorporation, bylaws, or similar organizational document of the Debtor on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted.

I.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtor, and its officers, are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

J.      *Insurance.*

Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor shall be deemed to have assumed all of the Debtor's Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's foregoing assumption of each of the unexpired Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be filed.

*K.      Employee Benefits.*

Unless otherwise provided herein, and subject to Article V hereof, all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtor shall be assumed by the Reorganized Debtor and shall remain in place as of the Effective Date, and the Reorganized Debtor will continue to honor such agreements, arrangements, programs, and plans.

*L.      Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor, shall retain and may enforce all rights to commence and pursue, any and all Causes of Action of the Debtor, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than any Causes of Action specifically released by the Debtor pursuant to the Plan.

The Reorganized Debtor may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. **No Entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action of the Debtor against it. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action of the Debtor against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtor expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation of the Plan.

The Reorganized Debtor reserves and shall retain such Causes of Action of the Debtor notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor.  The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.      Assumption and Rejection of Specific Executory Contracts and Unexpired Leases of Debtor.*

On the Effective Date, the following Executory Contracts and Unexpired Leases (the "Specific Agreements") are assumed or rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code as follows:

1.     Conrac Subleases:   Debtor shall assume the Conrac Subleases.   Any Cure obligations and any Actual Pecuniary Loss Claims owed by Debtor to the Conrac shall either be agreed to by the parties or determined by the Bankruptcy Court.  Any Cure obligations and any Actual Pecuniary Loss Claims shall be satisfied by application by the Conrac of the Rent and O&M Expense Reimbursement due to Debtor for the October 2017 to September 2018 Sublease Agreement Year of approximately $409,848.  In connection with the assumption of the Conrac Subleases, confirmation of the Plan shall result in Debtor being deemed not in default and in "Good Standing" under all applicable agreements with the Conrac and the City ABIA, and all agreements related thereto and/or integrated therewith, including the ABIA Bond Indenture and the Master Lease and Debtor shall thereafter be deemed to be in "Good Standing" as long as Debtor is satisfying its obligations to the Conrac and the City ABIA under the Plan.  Likewise, any and all purported cross-default provisions in the Conrac Subleases or any other agreement between Debtor and the Conrac or the City ABIA shall be of no force and effect and shall not be applicable or enforceable against Debtor while Debtor is making payments under the Plan to satisfy all claims of creditors under the Plan.  The ABIA Bond Trustee, if it has not already done so, shall fund to the City ABIA the $409,848 due to Debtor and the City ABIA shall pay the Conrac the amount necessary to satisfy the Debtor's Cure obligations and Actual Pecuniary Loss Claims to the Conrac in connection with the assumption of the Conrac Subleases.  The City ABIA shall retain the balance and apply that balance to the Debtor's Cure obligations and any Actual Pecuniary Loss Claims under the ABIA Concession Agreements assumed by Debtor as provided in this Plan.

As an alternative satisfaction of the Cure obligations and any Actual Pecuniary Loss Claims of the Debtor to the Conrac if the Bankruptcy Court determines that it cannot deem Debtor in "Good Standing" under the Conrac Subleases under applicable bankruptcy and/or non-bankruptcy law, Debtor shall pay the Conrac $16,000 per month until all such Cure obligations and Actual Pecuniary Loss Claims are paid in full.  Payment shall be made on or before the fifteenth (15th) day of each month.  If Debtor fails to timely make a payment, the Conrac shall provide written notice of default to Debtor and Debtor shall have ten (10) calendar days to cure such default.  The first such payment shall be due on September 15, 2019 (although Debtor may pre-pay such obligations if Debtor has funds available to make pre-payments).

2.     ABIA Concession Agreements:   Debtor shall assume the ABIA Concession Agreements.  Any Cure obligations and Actual Pecuniary Loss Claims owed by Debtor to the City ABIA shall either be agreed to by the parties or determined by the Bankruptcy Court.  If the Bankruptcy Court determines that the confirmation of the Plan shall result in Debtor being deemed not in default and in "Good Standing" under all agreements with the Conrac and the City ABIA, and all agreements related thereto and integrated therewith, including the ABIA Indenture and the Master Lease, then the City ABIA shall apply the balance of the Rent and O&M Expense Reimbursement not paid to the Conrac in connection with the assumption of the Conrac Subleases to the Cure obligations and Actual Pecuniary Loss Claims of Debtor to the City ABIA in connection with assumption of the ABIA Concession Agreements.  The remaining Cure obligations and Actual Pecuniary Loss Claims should be satisfied by Debtor paying the City ABIA $20,000 per month, on or before the fifteenth (15th) day of each month, commencing on September 15, 2019, until all such obligations are paid in full.  If Debtor defaults on a monthly payment, the City ABIA shall give Debtor written notice of the such payment default and Debtor shall have ten (10) calendar days to cure such default.  So long as Debtor is current (or cures any payment default within the ten (10) days cure period), Debtor shall not be constituted in default and shall be deemed to be in "Good Standing" under the ABIA Concession Agreements and all related agreements with the City ABIA

and the Conrac, and all agreements related thereto and integrated therewith, including the ABIA Indenture and the Master Lease. Further, if Debtor is not in default on its monthly Cure obligation and Actual Pecuniary Loss Claim monthly payments (or cures any default within the ten (10) day cure period for such payments) and, thus, Debtor is deemed to be in "Good Standing", then, if there are any remaining Cure obligations or Actual Pecuniary Loss Claims owed to the City ABIA at the time the Rent and O&M Reimbursement Obligation for Debtor is due to be paid to the Conrac by the City ABIA for Sublease Agreement Year October 2018 to September 2019, the City may apply a portion of such funds to fully satisfy any remaining Cure obligations and Actual Pecuniary Loss Claims of Debtor related to the assumption of the ABIA Concession Agreements. Any cross-default provisions in any agreement between Debtor and City ABIA or the Conrac shall be unenforceable and of no force and effect while Debtor is making payments under the Plan to satisfy all of the claims of creditors under the Plan.

As an alternative satisfaction of the Cure obligations and Actual Pecuniary Loss Claims of the Conrac if the Bankruptcy Court determines that it cannot deem Debtor in "Good Standing" under the ABIA Concession Agreements under applicable bankruptcy and/or non-bankruptcy law, Debtor shall pay the City ABIA $26,000 per month until all such obligations are paid in full. Payment shall be made on or before the fifteenth (15th) day of each month. If Debtor fails to timely make a payment, the City ABIA shall provide written notice of default to Debtor and Debtor shall have ten (10) calendar days to cure such default. The first such payment shall be due on September 15, 2019 (although Debtor may pre-pay such obligations if Debtor has funds available to make pre-payments).

3.     Service Center Lease:  The City ABIA asserts that the Service Center Lease has expired and is a month to month lease. Debtor disputes the City ABIA assertion. The Bankruptcy Court shall determine if the Service Center Lease is a month to month lease or if it is a continuing unexpired lease and shall also determine the remaining term and extension options with respect to the Service Center Lease.

If the Service Center Lease is not a month to month lease, then Debtor shall assume the Service Center Lease. Debtor and City ABIA shall agree on the Cure obligations and the Actual Pecuniary Loss Claims of the City ABIA related to assumption of the Service Center Lease or such obligations shall be determined by the Bankruptcy Court. Debtor shall satisfy any Cure obligations and Actual Pecuniary Loss Claims of City ABIA by making equal monthly payments on the first (1st) day of the month over a twelve (12) month period, with the first such payment being due September 1, 2019. If Debtor fails to make its monthly payment, then City ABIA shall provide Debtor with a written notice of default and Debtor shall have ten (10) calendar days to cure such default. So long as Debtor is current on the regular monthly lease payment due under the Service Center Lease and the monthly payment of Cure obligations and Actual Pecuniary Loss Claims, then Debtor shall not be considered in default and shall be considered in "Good Standing" under any other agreements with The City of ABIA or the Conrac as relates to the Service Center Lease and any purported cross-default provision in any other such agreement shall be of no force and effect and shall be unenforceable.

If the Service Center Lease is determined to be a month to month lease, then Debtor shall have the option to remain in the leased premises on a month to month basis or reject the Service Center Lease immediately or at such time as the City ABIA provides notice that the month to month tenancy is to be terminated. Any rejection damage claim of the City ABIA as a result of rejection

shall be paid as a general unsecured claim under the Plan and will either be agreed to by the parties or determined by the Bankruptcy Court.

       4.    <u>Hincklease Fleet Lease</u>:  Debtor shall assume the Hinckley's Inc. Master Lease Agreement, including the currently effective Vehicle Lease Schedules thereunder for vehicles currently in Debtor's rental vehicle fleet.  Debtor and Hinklease shall agree on the Cure obligations and any Actual Pecuniary Loss Claims in connection with the assumption of the Hinckelease Lease but if the parties cannot reach an agreement on such obligations, the amount of such obligations will be determined by the Bankruptcy Court.  Debtor shall satisfy the agreed upon amount or the Bankruptcy Court determined amount by paying Hincklease $10,000 per month on or before the twentieth (20th) day of the month until such obligations are paid in full.  If Debtor fails to  make the payment by the twentieth (20th) day of the month, Hincklease shall give Debtor written notice of such default and Debtor shall have ten (10) calendar days to cure such default.  The first $10,000 payment shall be due on October 20, 2019.

       Additionally, to the extent Debtor sells a vehicle under the Hincklease Lease, Debtor shall pay Hincklease the payoff amount for that vehicle and this shall further reduce the Cure obligations and any Actual Pecuniary Loss Claims of Debtor to Hincklease with respect to that vehicle.

       5.    <u>Selig Fleet Lease</u>:  Debtor shall assume the Selig Leasing Company, Inc. Master Lease Agreement, including the currently effective Vehicle Endorsements and Vehicle Leases thereunder for vehicles currently in Debtor's rental vehicle fleet.  Debtor and Selig shall agree on the cure obligations and Actual Pecuniary Loss Claims, if any, in connection with the assumption of the Selig Lease but if the parties cannot reach an agreement on such obligations, the amount will be determined by the Bankruptcy Court.  Debtor shall satisfy the agreed upon amount or the Bankruptcy Court determined amount by paying Selig $2,000 per month on or before the twentieth (20th) of the month until such obligations are paid in full.  If Debtor fails to make the monthly $2,000 payment by the twentieth (20th) of the month, Selig shall give Debtor written notice of such default and Debtor shall have ten (10) calendar days to cure such default.  The first $2,000 payment shall be due on October 20, 2019.

       Additionally, to the extent Debtor sells a vehicle under the Selig Lease, Debtor shall pay Selig the payoff amount for that vehicle and this shall further reduce the Cure obligations and any Actual Pecuniary Loss Claims of Debtor to Selig with respect to that vehicle.

       6.    <u>Franchise Agreements</u>:  Debtor shall assume the Franchise Agreements.  The Cure obligations and Actual Pecuniary Loss Claims, if any, of Franchisors shall be agreed to by Debtor and Franchisors or determined by the Bankruptcy Court if an agreement cannot be reached by the parties.  Debtor shall satisfy its Cure obligations and any Actual Pecuniary Loss Claims of the Franchisors through payment of an agreed monthly amount, payable on the twenty (20th) day of each month, commencing on October 20, 2019, until all such obligations are paid in full.  If Debtor and Franchisors cannot agree on a monthly payment amount, the Bankruptcy Court shall determine the appropriate time period and monthly amount to be paid by Debtor to Franchisors.  If Debtor defaults on a monthly payment to Franchisors, Franchisors shall give Debtor a written notice of default and Debtor shall have ten (10) calendar days to cure such default.

7.   <u>Clearwater Real Estate Lease:</u>  The Ground Lease Agreement between Debtor and Clearwater Real Estate LLC shall be assumed by Debtor.  Debtor was not in default to Clearwater Real Estate so there are no Cure obligations owned in connection with such assumption.  Additionally, the Ground Lease Agreement shall be modified by Clearwater Real Estate and Debtor to provide that the rent is reduced from $10,000 per month to $5,000 per month in connection with the assumption of the Ground Lease Agreement.  Further, Clearwater Real Estate agrees that it shall continue to market the Schertz real property for sale and if the real property owned by Clearwater Real Estate in Schertz, Texas is sold that the net proceeds from the sale of such real property (after paying all required obligations at closing) will be paid to the Reorganized Debtor for use in making distributions required under the Plan.

B.   *Assumption and Rejection of the remainder of Debtor's Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided above in this Article V with respect to the Specific Agreements, all remaining Executory Contracts or Unexpired Leases of Debtor (the "Non-Specific Agreements") not otherwise assumed or rejected, as set out above, will be deemed assumed by the Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (1) those that are identified on any Rejected Executory Contracts and Unexpired Leases Schedule; (2) those previously expired or terminated pursuant to their own terms; (3) those that have been previously assumed or rejected by the Debtor pursuant to a Bankruptcy Court order; (4) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; or (5) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

With respect to the Non-Specific Agreements, Debtor believes that there are no defaults under such agreements so no Cure is owed and that confirmation of the Plan provides the Reorganized Debtor's ability to provide "adequate assurance of future performance thereunder" (within the meaning of section 365 of the Bankruptcy Code). If a counterparty asserts that a default exists under any Non-Specific Agreement and that Cure obligations or Actual Pecuniary Loss Claims exist in connection with the proposed assumption of any of the Non-Specific Agreements, such counterparty shall notify counsel for the Debtor in writing no later than fourteen (14) days prior to the Plan Objection Deadline of same and if the parties cannot reach an agreement on same, such counterparty shall file an objection to assumption of its agreement, describing the default it alleges exists and the Cure Obligation and Actual Pecuniary Loss Claim owed by the Plan Objection Deadline and the Bankruptcy Court will determine the issue. Any counterparty that fails to object timely to the proposed assumption or fails to assert that a Cure amount or Actual Pecuniary Loss Claim is due in connection with the proposed assumption will be deemed to have assented to such assumption and no Cure amount or Actual Pecuniary Loss Claim will be due to such counterparty.

C.   *General Provisions.*

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions or rejections of Debtor's Executory Contracts or Unexpired Leases as set forth in the Plan, any Assumed Executory Contract and Unexpired Leases Schedule, or any Rejected Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy

Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtor.

To the maximum extent permitted by applicable law, to the extent any provision in any Executory Contract or Unexpired Lease to be assumed pursuant to the Plan impairs, restricts or prevents, or purports to impair, restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" or "cross-default" provision), then such provision shall be deemed of no force and effect and deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

D.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor or the Reorganized Debtor, the Estate, or their property without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 8.

E.      *Cure Payments and Cure of Defaults.*

Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor or the Reorganized Debtor of the Cure; *provided* that nothing herein shall prevent the Reorganized Debtor from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtor also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtor to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such

assumption or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including any financial condition or bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

F.      *Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or the Reorganized Debtor, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

G.      *Insurance Policies.*

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtor.

H.      *Reservation of Rights.*

Nothing contained in the Plan or any Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

I.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

*J.*     *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by Debtor, will be performed by the Reorganized Debtor in the ordinary course of business.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.*     *Distributions on Account of Claims and Interests Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order of the Bankruptcy Court, or as otherwise agreed to by the Debtor or the Reorganized Debtor, as the case may be, and the holder of the applicable Claim or Interest, the Reorganized Debtor as Distribution Agent shall make distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Reorganized Debtor's right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims and Allowed Secured Tax Claims shall be paid in accordance with the Plan, and (3) Allowed General Unsecured Claims against Debtor shall be paid in accordance with the Plan. To the extent any Allowed Priority Tax Claim or Allowed Secured Tax claim is not due and owing on the Effective Date, such Claim may be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the holder of such Claim, may be paid when due and payable under applicable non-bankruptcy law or in the ordinary course of business, or paid under the Plan, with such payment determination at Debtor's discretion.

*B.*     *Disbursing Agent.*

All distributions under the Plan shall be made by the Reorganized Debtor who shall be the Disbursing Agent on the Effective Date.

*C.*     *Rights and Powers of Reorganized Debtor as Disbursing Agent.*

The Reorganized Debtor as Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Reorganized Debtor as Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtor as Disbursing Agent to be necessary and proper to implement the provisions hereof.

*D.*     *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.     Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and the Reorganized Debtor making distributions shall be authorized and entitled to recognize only those record holders

listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Reorganized Debtor shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.     Delivery of Distributions in General.

Except as otherwise provided herein, the Reorganized Debtor shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtor; *provided further*, *however*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder.

3.     Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any holder of an Allowed Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtor as Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims to such property or Interest in property shall be discharged and forever barred.

E.     *Manner of Payment.*

1.     All distributions of Cash to the holders of Allowed Claims under the Plan shall be made by the Reorganized Debtor as Disbursing Agent on behalf of the Debtor.

2.     At the option of the Reorganized Debtor as Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.     *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtor, and no holder of a prepetition Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

G.     *Setoffs and Recoupment.*

Except as expressly provided in this Plan, Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Reorganized Debtor

may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Reorganized Debtor and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by Reorganized Debtor of any and all claims, rights, and Causes of Action that such Reorganized Debtor may possess against the applicable holder. In no event shall any holder of Claims against the Debtor be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

H.      *Claims Paid or Payable by Third Parties.*

1.      Claims Paid by Third Parties.

The Debtor or the Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment on account of such Claim from a party that is not the Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Reorganized Debtor on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Disputed Claims Process.*

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtor or the Reorganized Debtor, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Plan. **Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      *Allowance of Claims.*

After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses Debtor had with respect to any Claim immediately prior to the Effective Date. The Debtor may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

C.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses Debtor had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to the Plan.

Any objections to Claims shall be served and filed on or before the 180th day after the Effective Date or by such later date as ordered by the Bankruptcy Court. All Claims not objected to by the end of such 180-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

D.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court. For the sake of clarity, the Reorganized Debtor may file a notice on the docket in the case reflecting such action.

E.    *Disallowance of Claims or Interests.*

All Claims and Interests of any Entity from which property is sought by the Debtor under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

F.    *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; provided that if only the Allowed amount of a Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

G.    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

H.    *No Interest.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII.
## DISCHARGE, RELEASE OF LIENS, INJUNCTION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against liabilities of, liens on,

obligations of, rights against, and interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the occurrence of the Effective Date.  The discharge granted to Debtor shall be construed to be the fullest discharge of Claims against Debtor under all applicable law.

B.      *Release of Liens.*

**Except as otherwise provided in the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor, the Estate, and the Reorganized Debtor shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**To the extent that any holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date, such holder (or the agent for such Holder) shall take any and all steps requested by the Debtor or the Reorganized Debtor that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtor shall be entitled to make any such filings or recordings on such holder's behalf.**

*C.      Injunctions.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Estate, and/or the Reorganized Debtor: (1) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Estate, or the Reorganized Debtor on account of or in connection with or with respect to any such Claims; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Estate, or the Reorganized Debtor or the property of the Debtor, the Estate, or the Reorganized Debtor on account of or in connection with or with respect to any such Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor, the Estate, or the Reorganized Debtor or against the property of the Debtor, the Estate, or the Reorganized Debtor on account of or in connection with or with respect to any such Claims unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims discharged, released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.

Additionally, so long as Debtor and/or the Reorganized Debtor is performing its obligations under the Plan and is not in default under the Plan (or has the ability to cure any default under the provisions of the Plan), any Entity with a Claim or obligation against Debtor, where such Claim or obligation is addressed by and is being treated and paid under the Plan, is enjoined from undertaking any action whatsoever to collect, satisfy, recover or enforce such Claim or obligation against any Affiliate of Debtor that is jointly or severably liable with Debtor on such Claim or obligation under any agreement, written or otherwise, including any guarantee of such Claim, or under applicable non-bankruptcy statutory, common or other law, so long as Debtor and/or the Reorganized Debtor is not in default under the Plan, or has the ability to cure any default under the Plan pursuant to the provisions of the Plan.  For the sake of clarity, the injunction provided for herein in this paragraph does not apply to any claim or obligation under any agreement with an Entity where the Affiliate is the sole and primary obligor and Debtor was only a contractual guarantor of such claim or obligation.

D.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

E.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

F.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to Confirmation and Effectiveness of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall be Final and shall;

(a)     authorize the Debtor or Reorganized Debtor to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and

other agreements or documents created in connection with the Plan;

(b) decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c) authorize the Debtor or Reorganized Debtor , as applicable or necessary, to: (i) implement the restructuring transactions provided for in the Plan; (ii) make all distributions and issuances as required under the Plan; and (iii) enter into any agreements, transactions, and dispositions of property as set forth in the Plan or any Plan Supplement; and

(d) authorize the implementation of the Plan in accordance with its terms;

2. the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan; and

3. the final version of any Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtor.

## B. *Waiver of Conditions.*

The conditions to Confirmation and Effectiveness set forth in this Article may be waived by the Debtor, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## C. *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, Claims, or Interests; (2) prejudice in any manner the rights of the Debtor, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any holders of Claims or Interests, or any other Entity.

# ARTICLE X.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## A. *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor expressly

reserves its respective right to revoke or withdraw, or to alter, amend, or modify the Plan with respect to Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other Entity.

# ARTICLE XI.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which Debtor is party or with respect to which Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures or Actual Pecuniary Loss Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or

supplementing, after the Effective Date, pursuant to the Plan revisions, correcting or modifying the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise treated under the Plan; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, discharges, injunctions, indentures, and other agreements or documents created in or provided for in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any matter related to Debtor's or the Reorganized Debtor's property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to the Plan;

13.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     enter an order concluding or closing the Chapter 11 Case;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court; and

23.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, any Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

B.     *Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Reorganized Debtor for each quarter (including any fraction thereof) until the earlier of entry

of a final decree closing such Chapter 11 Case or an order of dismissal or conversion, whichever comes first.

D.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by Debtor with respect to the Plan, the Disclosure Statement, or any Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices.*

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission or electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtor | Counsel to the Debtor |
|---|---|
| Clearwater Transportation, Ltd.<br>6013 Fountainwood<br>San Antonio, Texas 78233<br>Attention: Monty Merrill<br>Email: montymerrill@clearwatertransportation.net | Dykema Gossett PLLC<br>112 E. Pecan Street, Suite 1800<br>San Antonio, Texas 78205<br>Attention: Patrick L. Huffstickler<br>Email: phuffstickler@dykema.com |
| **United States Trustee** | |
| Office of The United States Trustee<br>615 E. Houston, Suite 533<br>San Antonio, Texas 78205<br>Attention: Kevin Epstein | |

After the Effective Date, the Debtor has authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      *Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, any Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Exhibits.*

All exhibits and documents included in the Plan or any Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of its respective Affiliates, agents, representatives, members, principals, general and limited partners, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, neither any of such parties or individuals or the Reorganized Debtor will

have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

L.      *Closing of Chapter 11 Case.*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

M.      *Waiver or Estoppel.*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

N.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, any Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

Dated:  June 7, 2019                CLEARWATER TRANSPORTATION, LTD.


BY:*/s/  Monty Merrill*
    Monty Merrill
    President