**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 30, 2019.**



_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | **CHAPTER 11 CASE** |
| | § | |
| **CLEARWATER TRANSPORTATION, LTD.,** | § | **CASE NO. 19-50292-cag** |
| | § | |
| Debtor.[1] | § | |

**ORDER WITH RESPECT TO KILLEEN SALE MOTION (A) APPROVING ASSET PURCHASE AGREEMENT, (B) AUTHORIZING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (C) APPROVING ASSUMPTION AND ASSIGNMENT OF KILLEEN CONCESSION AGREEMENT AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion") of Clearwater Transportation Ltd., as debtor and

debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Case"),

pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006, for

---

[1] The Debtor's address is 6013 Fountainwood, San Antonio, Texas 78233 and the last four digits of its Federal Tax Identification number are 2020.

entry of an order (this "Order") (a) approving the sale (the "Sale") of the Debtor's assets (the "Assets") free and clear of all liens, claims, encumbrances and other interests pursuant to the terms and conditions of the Asset Purchase Agreement attached hereto as **Exhibit 1** (collectively with all exhibits thereto, the "Agreement" or the "APA"), dated as of July 12, 2019 and executed by and between the Debtor, as seller ("Debtor", "Clearwater", or the "Seller"), and The Hertz Corporation, as Buyer ("Hertz" or the "Buyer"), (b) approving the assumption and assignment of the Killeen Concession Agreement (the "Assigned Contract"), and (c) granting related relief as more fully described in the Sale Motion; the Debtor having determined, exercising its business judgement that the Buyer has submitted the best offer for the Assets; adequate and sufficient notice of the Sale Motion, and the hearing on the Sale Motion held before the Court on July 30, 2019 (the "Sale Hearing"); the Court having reviewed and considered the Sale Motion and all related pleadings, the objections thereto, if any, and the statements of counsel on the record and the evidence presented or proffered at the Sale Hearing; it appearing that the Court has jurisdiction to consider and determine this matter in accordance with 28 U.S.C. §§ 157 and 1334; it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; it further appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, creditors and other parties-in-interest; upon the record of the Sale Hearing and all other pleadings and proceedings in the Case, including the Sale Motion; and after due deliberation thereon and good and sufficient cause appearing therefor;

4826-2342-5688.3 7/24/2019

IT IS HEREBY FOUND AND DETERMINED:

### Jurisdiction, Defined Terms, Statutory Predicates, and Final Order

A.    The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. § 1334.    The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f) and (m) and 365(a), (b) and (f) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Bankruptcy Local Rules for the Western District of Texas (the "Local Rules").

C.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs that this Order be effective immediately upon entry.

D.    All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Motion or the APA, as applicable.

### Notice of Sale and Cure Amounts

E.    Notice of the Sale Motion, the Sale Hearing, the Sale of the Assets, and a reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein, has been afforded to (i) all known parties in interest, including the parties on the limited service list for the Case; (ii) all state and local taxing authorities which have a

4826-2342-5688.3 7/24/2019

reasonably known interest in the relief requested; (iii) all non-debtor parties to the relevant agreements; and (iv) all parties who may have asserted any lien, encumbrance, claim, or other interest in the Assets.

F.    The Debtor has served notice upon the Assigned Contract Counterparty (i.e., the City of Killeen) and its City Attorney: (i) that the Debtor seeks to assume and assign to the Buyer the Assigned Contract on the closing date of the Sale (the "<u>Closing Date</u>"); and (ii) of the relevant Cure Amounts (as defined below). The service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of establishing a Cure Amount for the Assigned Contract. The Contract Counterparty has had an opportunity to object to the Cure Amounts at the Sale Hearing and to the assumption and assignment to the Buyer of the Assigned Contract.

G.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, the Sale, and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assigned Contract to Hertz, was provided in accordance with the orders previously entered by this Court, sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008. The notices were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, the Sale, the Closing Date or the assumption and assignment of the Assigned Contract to Hertz is or shall be required.

<b><u>Good Faith of the Buyer</u></b>

H.    The Agreement was negotiated, proposed, and entered into by the Debtor and Hertz without collusion, in good faith, and from arm's length bargaining positions.

4

I.     The Buyer is not an "insider" or "affiliate" of the Debtor as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code.  Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Buyer has not acted in a collusive manner with any person.

J.     The Buyer is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. The Buyer proceeded in good faith in connection with all aspects of the Sale.

K.     The Agreement constitutes the best offer for the Assets as Debtor would have closed its Killeen location otherwise.  The Debtor's determination that the Agreement constitutes the best offer for the Assets in the circumstances constitutes a valid and sound exercise of the Debtor's business judgment.

L.     The Agreement represents a fair and reasonable offer to purchase the Assets under the circumstances of the Case.  No other person, entity, or group of entities has offered to purchase the Assets for value to the Debtor's estate.

M.     Approval of the Sale Motion and the APA, and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, the estate, creditors and other parties in interest.

### No Fraudulent Transfer or Merger

N.     The consideration provided by the Buyer pursuant to the Agreement (i) is fair and adequate, (ii) is the best offer for the Assets, (iii) will provide a greater benefit for the Debtor's estate than would be provided by any other available alternative, and (iv) constitutes a

4826-2342-5688.3 7/24/2019

reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code).

O.     The Buyer is not a mere continuation of the Debtor or its estate, and there is no continuity of enterprise between the Buyer and the Debtor.  The Buyer is not holding itself out to the public as a continuation of the Debtor.  The Buyer is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtor.

### Validity of Transfer

P.     The Debtor has, to the extent necessary and applicable, (i) full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Agreement, and (iii) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby.  The Sale has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Sale, execute the Agreement, or consummate the transactions contemplated thereby.

Q.     The Debtor has (except to the extent otherwise provided in the Agreement) title to the Assets.  The transfer of the Assets to the Buyer will be, as of the Closing Date (as defined in the Agreement), a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtor to the Assets free and clear of (i) all Liens (as defined in the APA) relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, any such Liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing

4826-2342-5688.3 7/24/2019

interest, right of first refusal, purchase, or repurchase right or option, or termination of, the Debtor or the Buyer's interests in the Purchased Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) and (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Case, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising any time prior to the Closing Date (collectively in this clause (ii), the "Claims" and, together with the Liens, the "Claims and Interests"), in exchange for the Assumed Liabilities as defined in the Agreement, which Assumed Liabilities are the cure obligations necessary to be paid in connection with the assumption and assignment of the Assigned Contract under section 365(a), (b), and (f) of the Bankruptcy Code.

### Section 363(f) is Satisfied

R.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Assets free and clear of any Claims and Interests in the property.  Any Claims and Interests shall attach to the funds paid to Debtor representing the PPEF Price to the extent and with the order of priority as existed on such Assets prior to the closing.

S.      The Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the Sale of the Purchased Assets to the

4826-2342-5688.3 7/24/2019

Buyer, and the assumption and assignment of the Assigned Contract to the Buyer, were not free and clear of all Claims and Interests of any kind or nature whatsoever (except the Assumed Liabilities), or if the Buyer would, or in the future could, be liable for any of such Claims and Interests.

T.      The Debtor may sell the Assets free and clear of all Claims and Interests against the Debtor, its estate, or any of the Assets (except the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Claims and Interests against the Debtor, its estate, or any of the Assets, who did not object, or who withdrew their objections to the Sale or the Sale Motion, are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.

**Assumption and Assignment of the Assigned Contract**

U.      The assumption and assignment of the Assigned Contract pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtor, its estate, creditors and other parties in interest, and represents the Debtor's reasonable exercise of sound and prudent business judgment.

V.      The respective amounts set forth on **Exhibit 2** annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Contract (the "Cure Amounts").

W.      The Buyer has demonstrated adequate assurance of future performance with respect to the Assigned Contract pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

4826-2342-5688.3 7/24/2019

## Compelling Circumstances for an Immediate Sale

X.     The Debtor has demonstrated, through the testimony and/or other evidence presented or proffered at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, good and sufficient reasons for approval of the Agreement and the Sale.  The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest.  The Debtor has demonstrated (i) good, sufficient, and sound business purposes and justifications for approving the Agreement and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a chapter 11 plan, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to its creditors.

Y.     To maximize the value of the Assets and preserve the viability of the businesses to which they relate, it is essential that the Sale occur within the time constraints set forth in the Agreement.  Time is of the essence in consummating the Sale.

Z.     Given all the circumstances of the Case and the value provided by the Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

AA.     The consummation of the Sale and the assumption and assignment of the Assigned Contract is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(a), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

4826-2342-5688.3 7/24/2019

**BASED ON THE FOREGOING FINDINGS, GOOD CAUSE EXISTS FOR ENTRY OF THE FOLLOWING ORDER. IT IS THEREFORE ORDERED:**

### General Provisions

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Case pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      The relief requested in the Sale Motion is granted and approved, and the transaction contemplated thereby and by the APA are approved as set forth in this Order.

3.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.  Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented to same.

4.      The notice of the Sale Motion and the Sale Hearing (and the transactions contemplated thereby) are approved as being fair, reasonable, and adequate under the circumstances of this Case, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

### Approval of the APA

5.      The Agreement and all other documents ancillary thereto, and all of the terms and conditions thereof, are hereby approved.

4826-2342-5688.3 7/24/2019

6.      Pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement, (ii) close the Sale as contemplated in the Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement, and fully close the Agreement, including the assumption and assignment of the Assigned Contract to the Buyer, together with all additional ancillary instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.

7.      This Order shall be binding in all respects upon (a) the Debtor, (b) the Debtor's estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders of Liens, Claims, encumbrances or other interests (whether known or unknown) in, against, or on all or any portion of the Assets, (e) the Assigned Contract Counterparty, (f) the Buyer and all successors and assigns of the Buyer, (g) the Assets, and (h) any trustee subsequently appointed in the Debtor's Case, or a chapter 7 trustee appointed upon a conversion of the Case to a case under chapter 7 of the Bankruptcy Code.  This Order and the Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Buyer, and the respective successors and assigns of each of the foregoing.

## Transfer of the Assets

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Assets to the Buyer on the Closing Date and such transfer shall (a) constitute a legal, valid, binding, and effective transfer of the Purchased Assets and (b) vest the Buyer with title to the Assets.  Upon the closing of the Sale, the Buyer shall take title to and possession of the Assets free and clear of any and all Claims and

4826-2342-5688.3 7/24/2019

Interests, subject only to the Assumed Liabilities. Any and all Claims and Interests against the Assets shall attach to the funds received by Debtor from Hertz representing the PPEF Price to the extent and in the order of priority as existed prior to the closing and Debtor shall hold and hereafter disburse such funds pursuant to other and further orders of the Court.

9. The Debtor is hereby authorized to take any and all actions necessary to consummate the transactions contemplated by the Agreement.

10. Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Buyer in accordance with the terms of the Agreement and this Order.

11. Subject to the terms, conditions, and provisions of this Order, all persons and entities, including, without limitation, all officers, directors, employees, agents, operators and/or contractors that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Buyer or its assignee at the closing of the Sale.

12. The transfer of the Assets to the Buyer pursuant to the APA does not require any consents or permits and, to the extent any such consent or permit might be found to be required, such consent or permit is deemed satisfied by entry of this Order.

13. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interests in the Assets. This Order is and shall be effective as a determination that, on the Closing Date, all Claims and Interests and any other interest of any kind or nature whatsoever existing as to the Assets prior to the Closing Date, other than the Assumed Obligations, shall

4826-2342-5688.3 7/24/2019

have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.

14.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all officers, directors, employees, agents, operators and/or contractors, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

15.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

16.     In accordance with section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of the Debtor's Case or the consummation of the transactions contemplated by the Agreement.

4826-2342-5688.3 7/24/2019

## Prohibition of Actions Against the Buyer

17.     Except as expressly provided for in this Order or the Agreement, the Buyer shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets other than any obligations explicitly assumed in the Agreement, specifically including the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, the Buyer shall not be liable for any Claims and Interests against the Debtor, or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties or liabilities relating to or arising from any Environmental Laws (as defined in the Agreement).

18.     Except with respect to Assumed Liabilities, or as otherwise permitted by the Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Claims of any kind or nature whatsoever against Debtor (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Assets to the Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer, any of

14

its affiliates, or any of the foregoing's successors or assigns, such persons' or entities' Claims, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its affiliates or any of the foregoing's successors or assigns; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, any of its affiliates or any of the foregoing's successors or assigns; (c) creating, perfecting, or enforcing any Claims against the Buyer, any of its affiliates or any of the foregoing's successors or assigns; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer, any of its affiliates, or any of the foregoing's successors or assigns; (e) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of this Order, other orders of the Court, or the Agreement or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any consent, license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

19.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Buyer in accordance with the terms of the Agreement and this Order.

20.     The consideration provided by the Buyer for the Assets under the Agreement is fair and reasonable and accordingly the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

## Assumption and Assignment of Assigned Contract

21.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the Debtor's assumption and assignment to the Buyer,

and the Buyer's assumption on the terms set forth in the Agreement, of the Assigned Contract is hereby approved, and the requirements of sections 365(a) and 365(b) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

22. The Debtor is hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing Date, the Assigned Contract and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contract to the Buyer.

23. The Assigned Contract shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contract after such assignment to and assumption by the Buyer.

24. All defaults or other obligations of the Debtor under the Assigned Contract arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be cured pursuant to the terms of the Agreement on the Closing Date or as soon thereafter as reasonably practicable by Buyer.

25. The total Cure Amount due to be paid by Hertz to the City of Killeen shall be $77,532.08 plus payment of CFCs for July determined under and paid as provided by the Assigned Contract, which total amount will not exceed $100,000 in connection with the assumption and assignment of the Assigned Contract. To the extent the Assigned Contract

4826-2342-5688.3 7/24/2019

Counterparty to the Assigned Contract failed to timely object to any aspect of the Cure Amount, such Cure Amount shall be deemed to be finally determined and the Assigned Contract Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of such aspect of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive and satisfy the obligations of the Assigned Contract. No sections or provisions of the Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the Assigned Contract Counterparty to the Assigned Contract shall have any force and effect with respect to the Sale and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code. No assignment of the Assigned Contract pursuant to the terms of the Agreement shall in any respect constitute a default under the Assigned Contract. The Assigned Contract Counterparty to the Assigned Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the Debtors' rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such Assigned Contract Counterparty's written consent to the assumption or assignment thereof.

26. The Assigned Contract Counterparty shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Debtor or the Buyer for any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers of the Assigned Contract in connection with the Sale.

4826-2342-5688.3 7/24/2019

27.     The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such term(s) or condition(s) or of the Debtor's and Buyer's rights to enforce every term and condition of such Assigned Contract.

28.     The Assigned Contract Counterparty is forever barred and enjoined from raising or asserting against the Buyer any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assigned Contract existing as of the Closing Date or arising by reason of the closing of the Sale, except for any amounts that are the Cure Amounts listed above.

### **Other Provisions**

29.     This Order, the Agreement, and all documents ancillary thereto shall be binding in all respects upon all of the Debtor's creditors, the Assigned Contract Counterparty, all successors and assigns of the Debtor, and any of their respective affiliates and subsidiaries, any trustees, examiners, "responsible persons," or other fiduciaries appointed in the Debtor's Case or upon a conversion of such Case to a case under chapter 7 of the Bankruptcy Code.  The Agreement and any documents ancillary thereto shall not be subject to rejection or avoidance under any circumstances.

30.     As of the date of this Order, Debtor's and Hertz's modification of the License Documents per the APA and Ancillary Documents is approved, and Debtor's License Documents shall be deemed modified to reflect that Debtor has ceased operating in the City of Killeen in Bell County and in the City of San Angelo in Tom Green County.

31.     The Agreement and all documents ancillary thereto may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, in accordance with the

4826-2342-5688.3 7/24/2019

terms thereof, without further order of the Court; provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

32.     For the sake of clarity, under the APA and with respect to the transactions approved by this Order, Debtor is not transferring to Hertz any of its leased or financed vehicles, nor is Debtor assigning or transferring to Hertz any rights, privileges, obligations, duties, or any other contractual benefits or burdens under its vehicle fleet leases and related agreements or its vehicle fleet financing agreements and related agreements.

33.     The transactions contemplated by the Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal.  The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

34.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) the Case, (b) any subsequent chapter 7 case into which the Case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

35.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

36.     The failure to specifically include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety; provided, however, that

this Order shall govern if there is any inconsistency between the Agreement (including all documents ancillary thereto) and this Order. Likewise, all of the provisions of this Order are non-severable and mutually dependent.

37. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Order, (c) protect the Buyer against any Claims against the Debtor of any kind or nature whatsoever, and (d) enter any orders under sections 363 or 365 of the Bankruptcy Code with respect to the Assigned Contract.

38. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6004(h), 6006(d), 7062, 9014, or otherwise. The Debtor and the Buyer are authorized to close the Sale immediately upon entry of this Order.

40. To the extent that this Order is inconsistent with the Agreement or any prior order or pleading with respect to the Sale Motion in the Case, the terms of this Order shall govern.

# # #

4826-2342-5688.3  7/24/2019

Prepared and submitted by:

**DYKEMA GOSSETT PLLC**

Patrick L. Huffstickler
State Bar No. 10199250
phuffstickler@dykema.com
Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**